**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| XSTREAM SYSTEMS, INC.1 | Case No. 11-11086-CSS |
| Debtor. | |

**MOTION FOR AN ORDER AUTHORIZING DEBTORS TO EMPLOY K-SAL GROUP, LLC *NUNC PRO TUNC* TO THE PETITION DATE AND DESIGNATING KIM HETZEL SALBELLO AS CHIEF RESTRUCTURING OFFICER TO THE DEBTOR PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND <u>GRANTING RELATED RELIEF</u>**

XStream Systems, Inc. ("<u>XStream</u>" or the "<u>Debtor</u>"), hereby moves this Court (the "<u>Motion</u>") for entry of an order (the "<u>Order</u>"), in substantially the form attached hereto as Exhibit "A", authorizing the Debtor to employ and retain K-Sal Group, LLC ("<u>K-Sal</u>") nunc pro tunc to the Petition Date (as defined below), designating Kim Hetzel Salbello as Chief Restructuring Officer ("CRO") to the Debtor and granting related relief. The Debtor seeks to employ and retain K-Sal and designate Ms. Salbello as CRO pursuant to the terms of the Engagement Letter dated March 16, 2011 between K-Sal and the Debtor, a copy of which is attached hereto as Exhibit "B" (the "<u>Engagement Letter</u>"). The facts and circumstances supporting this Motion are set forth in (a) the Declaration of Kim Hetzel Salbello in Support of First Day Motions (the "<u>Salbello Declaration</u>"), filed on the Petition Date. As further support for the relief requested in the Motion, the Debtors respectfully state as follows:

---

1  The last four digits of the Debtor's federal tax identification number are: 0466. The Debtor's mailing address for purpose of this case is 10305 102nd Terrace, Suite 101, Sebastian, FL 32958.

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. 327(a).  This is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 101 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

## II. BACKGROUND

3.      On April 8, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  the Debtor continues to manage and operate its business as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4.      No official committees have been appointed in this Chapter 11 case.  Further, no trustee or examiner has been requested or appointed in this Chapter 11 case.

5.      As more fully explained in the Salbello Declaration, XStream is in the business of producing and marketing x-ray diffraction machines for use in pharmaceutical counterfeit detection (the "Devices").  It had been funded by several debt and equity raises over the past three years.  However, because of its current financial status, it is unable to raise either debt or equity.  And because it does not generate any appreciable cash flow from its current business, it is in a state of an acute liquidity crisis, without sufficient available funds to make payroll, pay rent, utilities or other necessary and essential operating expenses.

6.      Currently, the Debtor's assets consist primarily of intellectual property relating to the design and manufacture of the Devices, along with several Devices and inconsequential office equipment.

7.      Prior to the Bankruptcy filing, XStream attempted an initial public offering to raise capital.  This effort proved unsuccessful.

8.      When it became apparent that XStream was unable to sell itself or otherwise raise capital, two individuals, Anthony Chidoni, XStream's Co-CEO, and Simon Irish, an XStream Board member, formed a company called XSI, Inc. ("XSI") for the purpose of providing financing to XStream to allow it to file for bankruptcy protection and to provide it with postpetition Debtor-in-Possession financing.

9.      Shortly thereafter, Messrs. Chidoni, and Irish stated their intention to resign from XStream.

10.     Such resignations, once effective, would leave XStream completely without management.  Accordingly, existing management, with the assistance of their counsel, commenced a search for a chief restructuring officer.

11.     After interviewing several candidates, XStream selected K-Sal and the CRO to be engaged to fill their roles.  Neither K-Sal, nor the CRO had been known to XStream or any of its Officers or Directors.

12.     XStream retained K-Sal and the CRO's on March 16, 2011.  On March 21, 2011, Messrs. Chidoni and Irish resigned from their positions with XStream.

13.     On March 29, 2011, Joseph Melone, an XStream Director resigned from his position as a Director of XStream.   On information and belief, Mr. Melone has since become an investor in XSI.

14.     On or about April 1, 2011, Mr. John Lowrey, XStream's Co-CEO and a Director resigned from his positions of XStream.

15. On April 5, 2011, Dr. Edwin Darracott Vaughan, an XStream Director resigned from his position as a Director of XStream.

16. Due to these resignations, the CRO remains the only management of XStream.

17. Additional information regarding the XStream' business, capital structure, and the circumstances leading to the chapter 11 filing is contained in the Salbello Declaration.

### III. RELIEF REQUESTED

18. By this Motion, the Debtor seeks the entry of an Order, pursuant to sections 105(a) and 363 of the Bankruptcy Code, approving the employment of K-Sal to provide management and restructuring consulting services *nunc pro tunc* to the Petition Date and designating Ms. Salbello as CRO, all as more fully set forth in this Motion and in the Engagement Letter.

19. The Engagement Letter describes (a) the various services that K-Sal and Ms. Salbello anticipate performing for the Debtor and (b) the terms and conditions of their engagement, including K-Sal's compensation. K-Sal and Ms. Salbello's continued provision of services to the Debtor is contingent upon the Court's approval of the terms and conditions of the Engagement Letter.

### IV. BASIS FOR RELIEF

20. The retention of K-Sal and the designation of Ms. Salbello as CRO is proper under section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides in part that the "trustee after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Pursuant to section 1107 of the Bankruptcy Code, "a debtor in possession shall have all the rights, other than the right of compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3) and (4) of this title, of a trustee

serving in a case under this chapter." 11 U.S.C. § 1107. Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable judgment on the part of the debtor, such use should be approved. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3rd Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to Section 363(b)); In re Exide Technologies, Inc., Case No. 02-11125 (Bankr. D. Del. May 10, 2002); Committee of Asbestos-Released Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct"); Stephens Indus., Inc, v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); In re Gulf States Steel, Inc., 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002).

21.     The Debtor's decision to retain K-Sal and Ms. Salbello is a sound exercise of the Debtor's business judgment. Ms. Salbello has extensive experience as a restructuring officer and as an advisor for financially troubled companies. The Debtor believes that Ms. Salbello, acting as CRO to the Debtor will provide services that are necessary to the Debtor and that will benefit the Debtor's estate and its creditors.  In light of the foregoing, the Debtor believes that the retention of K-Sal is appropriate and in the best interest of the Debtor, its estate and creditors.

## V. SERVICES TO BE RENDERED

22.     Ms. Salbello, will serve as CRO of the Debtor and, pursuant to the Engagement Letter, will perform all of the duties and obligations usually associated with the position of CRO of a Delaware corporation.  These duties include, but are not limited to:

- Overseeing the Debtor's banking relationships and dealings with secured and unsecured creditors;
- Overseeing ongoing business operations;
- Overseeing the Debtor's bankruptcy process, including the preparation of all relevant reports and schedules;
- Retaining an investment banking firm to market and sell the Debtor or its assets;
- Evaluating any bids received with respect to the sale of the Debtor or its assets;
- Assisting in the formulation of any plan of reorganization or liquidation and the associated disclosure statement; and
- Perform any necessary claim review and resolution process.
- Coordinate all activities necessary for the expeditious and efficient resolution of this Chapter 11 Case.

## VI. K-SAL AND MS. SALBELLO'S QUALIFICATIONS

23.     The Debtor Chose to engage K-Sal because of Ms. Salbello's extensive experience and knowledge in the fields of business management, debtors' and creditors' rights, operational systems, financial and strategic planning and implementation and business reorganizations under chapter 11 of the Bankruptcy Code.

24.     Ms. Salbello has been involved in the turnaround consulting business for 10 years and has been involved in dozens of engagements (both on the debtor and creditor sides). Most recently she assisted CRO of The Innovative Stone Companies in their Chapter 11 proceedings in the Eastern District of NY.  The Innovative Companies was a key supplier of high quality tile and stone to commercial and residential customers. As part of this team, Ms Salbello was involved in executing a transaction whereby an investment banker was retained, a replacement

lender located who then credit bid their loan to purchase the core assets through a 363 sale process.

25.     On March 15, 2011, XStream's Board unanimously authorized the retention K-Sal and Ms. Salbello as CRO.

## VII.     K-SAL'S DISINTERESTEDNESS

26.     Although not required for K-Sal' retention under section 363 in this case to the best of the Debtor's knowledge and as disclosed herein and in the Salbello Declaration, K-Sal (a) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b), and (b) does not hold or represent an interest adverse to the Debtor's estate.

27.     Furthermore, as set forth in the Salbello Declaration to the best of her knowledge, neither K-Sal nor Kim Hetzel Salbello has any connection with the Debtor, its creditors, equity holders, or any other parties-in-interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.  K-Sal will promptly disclose such information to this Court, creditors of the Debtors and the United States Trustee if it discovers any information to the contrary.

## VIII.     PROFESSIONAL COMPENSATION

28.     Since being retained, K-Sal has received $20,000 from the Debtor as an advance retainer. Of this amount, $10,000 has been invoiced for pre-petition services. The remaining $10,000 - with an additional $5,000 to be received during week 3 of the current approved budget - will be held as a retainer for postposition services and expenses during the pendency of this Chapter 11 Case.  No other retainer or other funds have been received by K-Sal or Ms. Salbello from or on behalf of the Debtor pre-petition.

29.     In consideration for the services rendered and to be rendered by Ms. Salbello, the Debtor has agreed to pay K-Sal $250/hr. for time spent by Ms. Salbello in connection with the Debtor and this case, along with reimbursement of related reasonable and necessary expenses. The Debtor has further agreed to make such payments to K-Sal on a bi-weekly basis, subject to approval by this Court. The expenses to be charged include, among other things, regular and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, meals, computerized research charges, and transportation costs. No profit margin will be included in these charges.

30.     The Debtor believes that the compensation is comparable or more favorable to those generally charged by Chief Restructuring Officers and other restructuring advisors of similar stature to Ms. Salbello and K-Sal for comparable engagements.

31.     In light of the foregoing, the Debtor believes that the compensation is both fair and reasonable under the circumstances of this engagement.

32.     K-Sal is not being employed as a professional under section 327 of the Bankruptcy Code.  It, therefore, does not intend to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, and the Debtor requests a waiver, to the extent necessary, that K-Sal submit fee applications.

## IX. INDEMNIFICATION

33.     The Debtor will indemnify K-Sal and Ms. Salbello to the fullest extent permitted by applicable law, including advancement of expenses, which indemnification and advance of expenses will continue after the termination of the Engagement Letter for such period as may be reasonably required to continue to fully indemnify K-Sal and Ms. Salbello for their acts during the term of the Engagement Letter.

## X. NOTICE

34.     Notice of the Motion has been provided to:  (a) the United States Trustee; (b) those on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor, as identified in its chapter 11 petition; (c) counsel for XSI; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submit that no other or further notice is required.

## XI. CONCLUSION

35.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, XStream respectfully requests that the Court enter the Order (i) authorizing XStream retain K-Sal and Ms. Salbello, effective as of the Petition Date, and (ii) grant XStream such other relief that is just and proper.


[Signature Page Follows]

April 11,2011  
Wilmington, Delaware

BAYARD, P.A.

_/s/ Jamie L. Edmonson_
Jamie L. Edmonson (No. 4247)
Daniel A. O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000
Fax: (302) 658-6395

-and-

GERSTEN SAVAGE, LLP
Paul Rachmuth
600 Lexington Avenue
New York, New York  10022
Telephone: (212) 752-9700
Facsimile: (212) 980-5192

*Proposed Counsel for the Debtors and
Debtors in Possession*