# K-SAL GROUP LLC
## 1412 PARK AVENUE
## MAMARONECK, NEW YORK 10543
## 917-561-2040   KIM@KSALGROUP.COM

## Retention Agreement

March 16, 2011

XStream Systems, Inc.
c/o Gersten Savage, LLP
600 Lexington Avenue
New York, New York 10022
Attn: Paul Rachmuth

Dear Mr. Rachmuth:

This will confirm the agreement between K-Sal Group LLC ("Consultant") as consultant to XStream Systems, Inc. (the "Company"), pursuant to which Kim Hetzel Salbello will be retained as the Chief Restructuring Officer of the Company ("CRO") and Consultant shall provide support services to the CRO. This letter (the "Agreement") confirms out mutual understanding of the terms and condition upon which the services will be provided. The CRO shall report to the Board of Directors of the Company (the "Board").

As CRO of the Company, 1, and any additional personnel of Consultant that 1 deem necessary, shall advise and assist the Company in all areas of its business and management of its assets. 1 shall have the full corporate authority and power as the senior executive of the Company. My duties will include:

(a) prepare, review and file a petition for relief under chapter 11 of 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code") and related schedules, statements, affidavits, declarations and motions;

(b) appear as necessary at hearings relating to the Company's bankruptcy proceeding (the "Bankruptcy") and otherwise participate in the Bankruptcy, subject to retention as CRO in the Bankruptcy;

(c) maintain fiduciary duties of care and loyalty owed to the Company;

(d) assist in the marketing of the Company's assets to all interested parties, both prior to and during the Bankruptcy and remain non-conflicted during the process;

(e) oversee the sale of the company's assets pursuant to Bankruptcy Code section 363;

(f) prepare, review and file operating reports and other reports as required by the Bankruptcy Code or the court; and

(g) provide regular reports to the Board with respect to the Company and the Bankruptcy.

The Agreement shall expire upon (a) the closing, dismissal or conversion of the Bankruptcy; (b) 30 days written notice of either party; or (c) for Cause.

For the purposes of this Agreement, Cause shall include but not be limited to (a) the CRO's failure to follow the direction of the Board; (b) the Company's failure to cooperate with the CRO (e) the Board directing the CRO to engage in or ignore any activity that the CRO deems to be an illegal or unethical activity; or (d) the Company fails to pay any amounts due.

The Board has approved the Company's retention of a CRO and this Agreement shall be provided to the Board.

The expiration or termination of this Agreement will not destroy or diminish the binding force and effect of any of the provisions of this Agreement that expressly, or by reasonable implication, come into or continue in effect on or after such expiration or termination, including, without limitation, provisions relating to payment of fees and expenses, governing law, arbitration, and limitation of liability.

In consideration for the services provided, the Company will pay the Consultant a fee based on the hours worked by the CRO at an hourly rate of $250 plus reasonable out-of-pocket expenses incurred in connection with the service. Consultant shall invoice Company semi-monthly and just prior to a Bankruptcy. Invoices will be due upon receipt. If an invoice is not paid on a timely basis, the Consultant reserves the right to cease work until the amounts due are paid. Please note, the Consultant does not provide assurance regarding the outcome of our work and our fees are not contingent on the results of such work.

The Company shall pay a retainer of $15,000 (the "Retainer") to the Consultant upon execution of this Agreement. This retainer will be replenished to $15,000 prior to filing for Chapter 11 protection. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

The Company agrees to indemnify, defend and hold harmless the CRO, Consultant and their officers and directors, employees against any and all actions, claims, liabilities, losses, costs, damages or expenses (including reasonable attorneys fees) asserted against or incurred by them by reason of the CRO's and Consultant's engagement pursuant to this Agreement, except to the extent that such actions, claims, liabilities, losses, costs, damages or expenses result from CRO's gross negligence or willful misconduct.

The Company represents that all Information furnished by them or their agents to the best of their knowledge and information will be complete and correct in all material respects and that until the expiration of Consultant's engagement hereunder, the Company will advise Consultant and/or CRO immediately of the occurrence of any event or any other change known by them or their agents which results in the Information ceasing to be complete and correct in all material respects. The Company recognizes and confirms that Consultant (a) will use and rely primarily on the Information and on information available from generally recognized public sources in

performing the services contemplated hereby without having independently verified any of the same and (b) does not assume responsibility for accuracy or completeness of the Information and such other information and (c) will not make an appraisal of any of the assets or liabilities of the Company.

Any disputes arising under this Agreement shall be settled through binding arbitration conducted by the American Arbitration Association in the County of New York, and shall be before three (3) arbitrators, if either party so requests. Their decision will be binding on the parties and a judgment may be entered in any court of competent jurisdiction. This agreement shall be governed by and enforced in accordance with the laws of the State of New York.

The Confidentiality and Nondisclosure Agreement (the "NDA") between the Company and the CRO dated March 8, 2011 shall remain in effect, notwithstanding anything contained therein to the contrary. The CRO is permitted, however, to engage in such communications and make such disclosures as necessary to fulfill the obligations described herein.

This Agreement constitutes the entire agreement between the parties with regard to the subject matter hereof and supersede any and all agreements, with the exception of the.NDA, as described above. No amendment or modification to this Agreement will be valid unless in writing and signed by both parties.

If any portion of this Agreement is found to be invalid or unenforceable, such provision will be deemed severable from the remainder of this Agreement and will not cause the invalidity or unenforceability of the remainder of this Agreement, except to the extent that the severed provision deprives either party of a substantial portion of its bargain.

Neither party will be liable for any delay or failure to perform under this Agreement (other than with respect to payment obligations) to the extent such delay or failure is a result of an act of God, war, earthquake, civil disobedience, court order, labor dispute, or other cause beyond such party's reasonable control.

The Parties acknowledge that upon the Company's commencing of a bankruptcy proceeding, the terms of this Agreement are subject to the approval of, and/or modification by, the bankruptcy court in which such bankruptcy proceeding is pending.

We appreciate the opportunity to serve you and believe this Agreement accurately reflects our mutual understanding of the terms upon which the Services will be provided. If the foregoing is in accordance with your understanding, please sign a copy of this Agreement and return it to my attention.

[Signature Page Follows]

Date: 3/16/2011

Sincerely,

K-Sal Group, Inc.

By:  Kim Hetzel Salbello
     President

Accepted and agreed:

XStream Systems, Inc.

By:
Name:
Title: