IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| XSTREAM SYSTEMS, INC. | ) | Case No. 11-11086 (CSS) |
| | ) | |
| | ) | **Hearing Date: April 25, 2011 @ 11:00 a.m.** |
| | ) | **Related Dkt. No. 5** |

## LIMITED OBJECTION TO MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, ETC.

Kimball International, Inc. ("Kimball"), secured creditor of debtor Xstream Systems, Inc. ("Debtor"), by counsel, objects to the Debtor's "Motion for Order (A) Authorizing Debtor to Obtain Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C § 362; (C) Authorizing the Debtor to Enter into Agreements with XSI LLC; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001" (the "DIP Financing Motion") on the following grounds:

### I. SUMMARY OF OBJECTION

1. Debtor seeks an Order granting a "priming lien" on all of Debtor's assets to an entity formed by Debtor's insiders, XSI, LLC (the "Insider Lender"), including assets which are *significantly* over-encumbered by a pre-petition lien held by Kimball. The requested "priming lien" is intended to secure both the pre-petition credit facility from the Insider Lender on which there is an outstanding balance of $130,662.00, which is junior to Kimball's lien, as well as the requested DIP credit facility in the maximum principal amount of $183,500.00.

2. However, Debtor fails to make any requisite showing that Kimball's interests will

be adequately protected as required by Section 364(d) of Title 11 of United States Code (the "Bankruptcy Code"), and it is implausible that Debtor will be able to adequately protect Kimball's interests. Debtor contends the "overwhelming majority" of its assets, consisting of intellectual property, are unencumbered,[1] but nevertheless seeks to prime Kimball's secured lien on what the Debtor necessarily contends is the "overwhelming minority" of its assets. Debtor did not provide any valuation of its personal property in its Schedules. However, it cannot in good faith dispute that the value of the assets to which Kimball's lien attached are drastically less than the amount of Kimball's lien, which exceeds $2,600,000.00.

3. The proposed DIP Loan is not intended or contemplated to improve the value of the Estate or to otherwise improve the prospects of a successful reorganization. Debtor did not operate in several months prior to the bankruptcy, and is not currently operating. The 13-week budget attached as Exhibit "B" to the DIP Financing Motion (the "Budget") shows the Debtor will receive absolutely no revenue aside from the disbursements from the proposed DIP Loan, and the vast majority of the proceeds from the proposed DIP Loan will be used to pay professionals in connection with this Bankruptcy, which the Debtor chose to file under Chapter 11 opposed to filing a liquidation proceeding under Chapter 7.

4. Based on the Budget, the Debtor needs the DIP loan solely to pay its attorneys

---

[1] Debtor's Schedule D identifies Kimball as the only creditor holding a secured claim. Debtor contends in the DIP Financing Motion that the "overwhelming majority" of its assets are intellectual property and argues that Kimball's judgment lien does not attach to such property because it is not located in Florida. There has not been any effort by the Debtor to seek an Order determining the extent, validity and priority of liens, but as noted, at a minimum, Kimball holds a judgment lien on all of Debtor's tangible personal property.

and other professionals in connection with a contemplated sale of its assets, which Kimball expects will be proposed in the very near future, whether by motion or in a plan to an insider controlled entity, most likely the Insider Lender or its assignees.  The relief sought, as a practical matter, serves to frustrate Kimball's ability to credit bid its judgment lien pursuant to §363(k) of the Bankruptcy Code at any sale, grants insiders a strategic advantage in purchasing Debtor's assets at a sale, and is unnecessary because the "overwhelming majority" of Debtor's assets are unencumbered.  Accordingly, the Debtor should be able to accomplish the financing of the professional fees through alternative means less prejudicial to Kimball and other creditors of the Debtor's bankruptcy estate.

5. Kimball does not object to the Debtor obtaining DIP financing or granting liens on the unencumbered intellectual property, but it is improper for the Insider Lender to seek an Order priming Kimball's secured lien when adequate protection cannot possibly be provided.

## II.  SUMMARY OF KIMBALL'S SECURED CLAIM

6. On February 8, 2010 Kimball obtained a judgment against Debtor in the amount of Three Million Two Hundred Thousand Dollars ($3,200,000.00) in the United States District Court for the Southern District of Indiana in Cause No. 3:08-cv-00135-RLY-WGH (the "Judgment").  A true and correct copy of the Judgment is attached hereto as Exhibit "A."  The Debtor listed a non-contingent, liquidated, and undisputed debt to Kimball on its Schedule D of $2,580,288.00.

7. As acknowledged by Debtor in the DIP Financing Motion, on May 3, 2010 Kimball filed a  "Judgment Lien Certificate" with the Florida Secretary of State pursuant to Florida Statute § 55.203 , which is assigned file number J10000549326.  A true and correct copy

of the Judgment Lien Certificate is attached hereto as Exhibit "B."

8. Pursuant to Fla. Stat. § 55.202, the Judgment Lien Certificate provided Kimball a lien on " all personal property in [Florida] subject to execution under Fla. Stat. § 56.061, other than fixtures, money, negotiable instruments, and mortgages."  In turn, Fla. Stat. § 56.061 provides, in pertinent part, that "lands and tenements, goods and chattels, equities of redemption in real and personal property, and stock in corporations, shall be subject to execution."  On information and belief, all of Debtor's tangible personal property is located in Florida.

9. As a result of the Judgment Lien Certificate, Kimball holds a secured claim on all goods and chattels located in Florida, and should be treated as a secured creditor in this bankruptcy. *See In re Stembridge*, 2007 Bankr. LEXIS 4672 (Bankr. S.D. Fla. 2007) (judgment creditor held a fully secured claim under 11 U.S.C. §506(a) because judgment, once registered with Florida Secretary of State, became a lien on all of the debtor's personal property located in Florida).

10. The Debtor did not list a value for any of its tangible personal property, including its X-Ray Defraction Equipment, or other equipment. Though Debtor admits only that "Kimball may, allegedly, have a lien against this personal property by reason of it docketing the judgment in Florida," even a cursory review of Florida law and the public records proves Kimball's lien is valid.

### III.  GROUNDS FOR OBJECTION

11. Pursuant to Bankruptcy Code Section § 364(d)(1)(b), the Debtor and Insider Lender may only seek a "priming lien" if Debtor is unable to obtain such credit otherwise and "there is adequate protection of the interest of the holder of the lien on the property of the estate

on which senior or equal lien is proposed to be granted." The Debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. §§ 364(d)(2) and 1107.

12. As the Court is well aware, adequate protection protects a pre-existing lienholder against a decrease in the value of its collateral. *See, e.g. In re Planned Systems, Inc*., 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987). This standard applies equally with respect to a proposed "priming" financing under Bankruptcy Code Section 364(d)(1)(B). *See, e.g. In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) ("The goal of adequate protection for purposes of the provision entitling a debtor to obtain financing secured by liens senior to all other interests is to safeguard the secured creditor from diminution in the value of its interests."); *In re Aqua Assoc*., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991); *In re Beker Ind. Corp*., 58 B.R. 725, 741-42 (Bankr. S.D.N.Y. 1986).

13. When a debtor seeks to prime an existing creditor, it must also show that the creditor's interest is not being jeopardized, considering "all of the relevant facts, with a particular focus upon the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospects for successful reorganization of the Debtor's affairs by means of the Plan, and the Debtor's performance in accordance with the Plan." *In re Strug-Division LLC*, 380 B.R. 505, 513-14 (Bankr. N.D. Ill. 2008) (quoting *In re Aqua Assoc*., 123 B.R. 192, 196-97 (Bankr. E.D. Pa. 1991)). A debtor's use of credit obtained through a priming lien must be likely to benefit the estate and improve the debtor's ability to reorganize. *See id.*; *In re 495 Cent. Park Ave. Corp*., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Mosello*, 195 B.R. 277 (Bankr. S.D.N.Y. 1996) (finding potential increase in value from Chapter 11 debtor's property development plans too speculative to adequately protect mortgagee's undersecured interest in debtor's property).

14. The DIP Financing Motion is devoid of any showing that Kimball's interests are adequately protected and does not even use the phrase "adequate protection." The Court cannot use the Debtor's valuation of the assets as a starting point, as there is no valuation in the schedules. Debtor must concede that Kimball is drastically undersecured. There are no facts before the Court demonstrating that the Court should deviate from the conventional wisdom that physical equipment and inventory will decrease in value as it is used and consumed in the ordinary course of business if the business were operating. Here, however, the likely effect of the proposed DIP loan is to subordinate Kimball's secured claim to the loan for professional expenses to give insiders a strategic advantage to acquire the Debtor's assets through a sale.

15. Based on the information before the Court, there is no likelihood of a reorganization in this case. Debtor makes an unsupported and conclusory statement that the Debtor's bankruptcy estate will suffer immediate and irreparable harm if the Debtor does not obtain DIP financing and requests the Court to turn a blind eye to the proposed Budget and the Debtor's pre-petition cessation of business. Debtor has not operated in a long time, and the proposed DIP loan solely funds the professionals in this case - at the expense of Kimball - pending an almost certain §363 sale.

16. In addition, Debtor has not made any showing that it is unable to obtain credit on terms without granting a priming lien to the Insider Lender. Relying solely on its self-serving claim of "futility," Debtor has made <u>no</u> attempt to obtain alternative means of credit. Debtor cannot have it both ways; it cannot make the claim that the "overwhelming majority" of assets are unencumbered and presumably available to secure DIP financing, but then ignore this

contention in seeking to grant a priming lien to an entity formed by insiders on assets fully encumbered by Kimball's secured claim.

17. Kimball objects to the entry of an Order granting a priming lien in any of Debtor's assets to which Kimball's judgment lien attaches.

WHEREFORE, Kimball respectfully requests that the Court:

(1) Sustain this Limited Objection;

(2) Deny Debtor's request for any Order that grants a priming lien pursuant to Section 364(d) of the Bankruptcy Code or grants a lien on all assets encumbered by Kimball's lien; and

(3) Grant Kimball all other just and proper relief.

Dated: April 22, 2011          SMITH, KATZENSTEIN & JENKINS LLP

/s/ Kathleen M. Miller
Kathleen M. Miller (I.D. No. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: 302-652-8400
Telecopy: 302-652-8405
E-mail: kmiler@skjlaw.com

And

James Rossow, Jr.
Rubin & Levin, P.C.
500 Marott Center
342 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: 317-860-2893
Telecopy: 317-453-8619
jim@rubin-levin.net
*Attorneys for Kimball International, Inc.*