IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>XSTREAM SYSTEMS, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 11-11086 (CSS) |

**OBJECTION OF BRIAN MAYO TO MOTION FOR ORDER
(A) AUTHORIZING DEBTOR TO OBTAIN INTERIM
POST-PETITION FINANCING AND GRANT SECURITY
INTERESTS AND SUPERPRIORITY ADMINISTRATIVE
EXPENSES STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c)
AND 364(d); (B) MODIFYING THE AUTOMATIC STAY PURSUANT
TO 11 U.C.S. § 362; (C) AUTHORIZING DEBTOR TO ENTER INTO
AGREEMENTS WITH XSI LLC; AND (D) SCHEDULING A
FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Brian Mayo objections as follows to the Debtor's Motion For Order (A) Authorizing Debtor To Obtain Interim Post-Petition Financing And Grant Security Interests And Superpriority Administrative Expenses Status Pursuant To 11 U.S.C. §§ 105, 364(c) And 364(d); (B) Modifying The Automatic Stay Pursuant To 11 U.C.S. § 362; (C) Authorizing Debtor To Enter Into Agreements With XSI LLC; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "Motion"):

**BACKGROUND**

1. On April 8, 2011, the Debtor filed with this Court a voluntary petition for Chapter 11 relief. Although as a matter of law the Debtor continues to "operate its business" as a Debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108, at the First Day Hearing held by this Court on April 12, 2011, the Debtor represented to the Court that it no longer manufactures any product and has no regular employees.

2. On April 21, 2011, the Office of the United States Trustee conducted its initial Organizational Meeting in this case. At the Organizational Meeting, two significant creditors expressed willingness to serve on an Unsecured Creditors Committee (Mr. Mayo and Bowne/RR Donnelly). Although additional creditors are being solicited, no Committee has been formed by the U.S. Trustee to date.

3. On April 18, 2011, the Court entered in the First Interim Order which in effect authorized the Debtor to use cash collateral in an amount not to exceed $5,000 in accordance with the Budget pending a continued hearing on the Motion scheduled for April 25, 2011.

## ARGUMENT

4. Pursuant to the Motion, the Debtor seeks approval of a $50,000 DIP loan on an interim basis, and an undetermined amount to be subsequently agreed upon between the Debtor and XSI, LLC ("XSI") as part of a Final Order. In addition, the Motion seeks to prime the existing first priority lien of Kimball Manufacturing, the Debtor's secured creditor. Even more alarming is the fact that the Motion seeks to validate and roll up the pre-petition indebtedness of XSI, an entity controlled by insiders of the Debtor that entered into a Senior Secured Demand Note, Security Agreement and Control Agreement approximately one month before the Chapter 11 filing. In addition, the Motion provides for a very limited period of forty-five days after the entry of the Interim Order for creditors or a trustee to investigate and challenge the alleged secured XSI's claims. The Motion also provides a very modest carve-out of $25,000 for professionals retained by a Creditors Committee. Finally, the Motion indicates that it is seeking a lien on all Chapter 5 avoidance actions as part of the Final Order.

5. In order to obtain approval of a post-petition financing, a Debtor bears the burden of proving that: (a) the proposed financing is an exercise of sound, reasonable business

2

judgment; (b) the financing is in the best interest of the estate and its creditors; (c) the transaction is necessary to preserve the assets of the estate, and is necessary, essential and appropriate for the continued operation of the Debtor's business; (d) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the Debtor/borrower and proposed lender, and (e) the financing was negotiated in good faith at an arms' length by the Debtor, on the one hand, and the lender on the other.  See In re Farmland Industries, Inc., 294 B.R. 855, 879-80 (Bankr. W.D. Mo. 2003); see also In re Aqua Associates., 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (proposed financing should be beneficial and reasonable); In re Ames Department Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) (court should focus on terms of proposed financing to ascertain whether they are reasonable).  In addition, it is well settled that when, as here, the proposed transaction is with insiders, it is subjected to heightened scrutiny and must satisfy the stricter "entire fairness" standard.  *E.g.,* In re Zenith Elecs. Corp., 241 B.R. 92, 108 (Bankr. D. Del. 1999). *See* Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc., 506 A.2d 173, 180, 184 (Del. 1986) ( "[w]hile the business judgment rule may be applicable to the actions of corporate directors . . . the principles upon which it is founded – care, loyalty and independence – must first be satisfied")*, citing* Unocal Corp v. Mesa Petroleum Co., 493 A.2d 946 (Del. 1985).

6. A court should deny approval of a post-petition financing if it is the product of lender overreaching.  See In re FCX, Inc., 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985) ("[T]he court should not ignore the basic injustice of an agreement in which the Debtor, acting out of desperation, has compromised the rights of unsecured creditors."); Aqua Associates, 123 B.R. at 195-96 ("[C]redit should not be approved when it is sought for the primary benefit of a party other than the Debtor."); Ames Department Stores, 115 B.R. 37 ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor

3

rather than the estate."); In re Mid-State Raceway, Inc., 323 B.R. 40, 59 (Bankr. N.D.N.Y. 2005) ("[B]ankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the proposed lender.").

7. Before approving a post-petition financing transaction pursuant to §364(c) of the Bankruptcy Code, the Court must find that, among other things, obtaining the loan is within the Debtor's reasonable business judgment. *See e.g.,* In re Farmland Industries, Inc., 294 B.R. 855, 879 (Bankr. W.D. Mo 2003). The business judgment rule comes into play based on the fiduciary duties owed by the Debtor's officers and directors to the Debtor's creditors. The fiduciary obligations consist of two duties: the duty of care and the duty of loyalty. The Debtors must show "first, that the proposed financing is an exercise of sound and reasonable business judgment; second, that no alternative financing is available on any other basis; third, that the financing is in the best interest of the estate and its creditors; and, as a corollary to the first three points, that no better offers, bids or timely proposals are before the Court." In re Phase-1 Molecular Toxicology, Inc., 285 B.R. 494, 495-96 (Bankr. D. Md. 2002) (*quoting* In re W. Pac. Airlines, Inc., 223 B.R. 567, 572 (Bankr. D. Colo. 1997)). Accordingly, a determination that the financing satisfies the business judgment rule is just the starting point.

8. When considering the propriety of debtor in possession financing, courts will consider not just whether the proposed financing is in the best interests of the estate and its creditors, but also whether it is an exercise of sound and reasonable business judgment. *See* Mid-State Raceway, *supra*, 323 B.R. at 60; *see also* In re Tenney Village Co. Inc., 104 B.R., 562, 569 (Bankr. D.N.H. 1989) (rejecting DIP financing proposal when, among other things, "the execution of the Financing Agreement violates the Debtors' fiduciary obligations to the estate"; a

4

lender cannot extend DIP financing to "seize control of the reins of reorganization."). Insider financing is subject to the strict "entire fairness" standard cited above.

9. In the present case, the Debtor cannot possibly carry its burden of demonstrating that the post-petition financing is fair, reasonable and adequate or that it is in the best interest of the estate. Given the fact that the financing was "negotiated" on behalf of the Debtor by a CRO that was hired by insiders of the Debtor a month before the bankruptcy case was filed indicates that the Debtor's business judgment in negotiating the post-petition financing with those same insiders should not be respected and may, in fact, constitute a breach of certain fiduciary duties owed to the Debtor's creditors. The post-petition financing in the current case appears to be nothing more than a mechanism to ensure that certain insiders that were (or perhaps, still are) in control of Debtor end up purchasing the Debtor's assets free and clear of liens at a Section 363 sale. The preposterously aggressive terms of the proposed post-petition financing perverts the reorganizational process by leaving the Debtor with little option but to accept the sale process that will inure only to the benefit of insiders who would now be able to credit bid its court approved secured claim to purchase the assets free and clear of liens. The proposed financing terms utterly hamstrings the Debtor and renders it unable to exercise its fiduciary duty to restructure in a manner that maximizes value for all creditors.

10. There is no evidence, nor can there be, that entities like Mr. Mayo, who hold large claims or equity positions, or both, and who have a stake in preserving the value of core assets were approached to provide or participate in financing on the same or more favorable terms.

11. Adding to the inequity is the fact that the Debtor does not need much in the way of post-petition financing. Although the Motion indicates that "the Debtor has an immediate need to obtain the post-petition financing in order to permit, among other things, the orderly

operation of its business and the continued marketing of itself and its assets, thereby allowing it to engage in an orderly sale through an auction…", the Debtor is not currently operating and has no employees. For the limited amount of funds that will be necessary to transition the Debtor to an auction sale, it is Mr. Mayo's position that it is *not* in the best interest of the estate and creditors to enter into an overreaching credit facility that rolls up pre-petition indebtedness, limits creditors' investigation rights into the pre-petition and post-petition liens of XSI, has a 5% origination fee for each advance and essentially insures that the Debtor's insiders are in control and will be the primary beneficiaries of a Section 363 auction sale.

## **CONCLUSION**

The proposed financing comes at far too high a cost to unsecured creditors to be in the best interest of the Debtor's estate. The unjust enrichment that will inure to XSI from the granting of the Motion mandate the denial of the Motion. Accordingly, Mr. Mayo respectfully requests that the Court deny Motion, at least until such time as a Committee is formed and the Debtor appropriately exposes the financing to the market.

Dated: April 22, 2011

Respectfully submitted,
STEVENS & LEE, P.C.

*/s/ Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
Maria Aprile Sawczuk (No. 3320)
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3310; -3306
Email: jhh/masa@stevenslee.com

-and-

Kevin T. Lamb
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500E
West Palm Beach, FL 33401
Telephone: (561) 650-0657
Email: klamb@gunster.com

6