# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>XSTREAM SYSTEMS, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 11-11086 (CSS)<br><br>Objections Due: May 25, 2011 at 4:00 p.m.<br>Hearing Date: June 1, 2011 at 3:00 p.m. |

## MOTION FOR AN ORDER AUTHORIZING AND APPROVING (I) THE DEBTOR'S EMPLOYMENT AND RETENTION OF STREAMBANK, LLC AS INVESTMENT BANKER; (II) STREAMBANK LLC'S COMPENSATION TERMS; (III) A WAIVER OF LOCAL RULE 2016-2(d); AND (IV) SALE PROCEDURES FOR THE DEBTOR'S PROPERTY

XStream Systems, Inc., the above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") for entry of an order, pursuant to sections 327(a), 328(a) and 363 of 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code") and Rules 2014, 2016, 6004 and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving (i) the employment and retention of Streambank, LLC ("Streambank"") to act as an investment banker to the Debtor as more fully described herein pursuant to the agreement between the Debtors and Streambank (the "IB Agreement"), (ii) the terms of Streambank's compensation as set forth in the IB Agreement, (iii) a waiver of Rule 2016-2(d) of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules") as it pertains to the payment of Streambank's compensation pursuant to the IB Agreement, and (iv) the sale of the below described assets pursuant to the IB Agreement and the sale procedures set forth herein (the "Sale Procedures"). In support of this Motion, the Debtor submits: (i) the Declaration of

---

[1] The last four digits of the Debtor's federal tax identification number are: 0466. The Debtor's mailing address for purposes of this case is 10305 102nd Terrace, Suite 101, Sebastian, FL 32958.

Kim Hetzel Salibello, Chief Restructuring Officer (the "CRO") in Support of the Motion (the "Salibello Declaration", annexed hereto as Exhibit "A") and the Declaration of Jack Hazan, a Principal of Streambank (the "Hazan Declaration", annexed hereto as Exhibit "B"), and further states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a), 328(a) and 363 of the Bankruptcy Code.

## BACKGROUND

2. On April 8, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtor is authorized to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No official committee, trustee or examiner has been appointed in this chapter 11 case.

## THE DEBTOR'S BUSINESS

5. As more fully explained in the Salibello Declaration, the Debtor is in the business of producing and marketing x-ray diffraction machines for use in pharmaceutical counterfeit detection (the "Devices"). It had been funded by several debt and equity raises over the past three years. However, because of its current financial status, it is unable to raise either debt or equity. And because it does not generate any appreciable cash flow from its current business, it

2

is in a state of an acute liquidity crisis, without sufficient available funds to make payroll, pay rent, utilities or other necessary and essential operating expenses.

6. Currently, the Debtor's assets consist primarily of intellectual property relating to the design and manufacture of the Devices, along with several Devices and inconsequential office equipment (collectively, the "Assets"). A schedule of the Assets is annexed hereto as Schedule 1.

7. Prior to the Bankruptcy filing, the Debtor attempted an initial public offering to raise capital. This effort proved unsuccessful.

8. When it became apparent that the Debtor was unable to obtain any further financing from either public or private sources, two individuals who were insiders of the Debtor formed a company, XSI, Inc. for the purpose of providing financing to the Debtor to allow it to file for bankruptcy protection and to provide the Debtor with postpetition Debtor-in-Possession financing.

9. Thereafter, on March 16, 2011, the Debtor retained the consulting firm K-Sal Group LLC and Kim Hetzel Salibello to act as the CRO. Ms. Salibello commenced a search for an investment banking firm to market and sell the Debtor and/or the Assets. Among the entities Ms. Salibello interviewed was Streambank. Ms. Salibello selected Streambank to act as investment banker for the Debtor because of its extensive experience in the marketing and sale of intellectual property assets in distressed situations as well as its broad understanding of intellectual property assets as a result of their intellectual property appraisal practice. Additionally, Streambank has been involved in numerous bankruptcy court sale processes before this and other bankruptcy courts and is therefore quite familiar and comfortable running a 363

sale process. Further, Streambank was willing to be retained on financial terms Ms. Salibello believed to be reasonable under the circumstances.

10. Ms. Salibello and Streambank have negotiated the IB Agreement, a copy of which is annexed hereto as Exhibit "C".

11. XSI has now presented the Debtor with a draft Asset Purchase Agreement (the "XSI APA") for the purchase of the Assets through a sale conducted under Section 363 of the Bankruptcy Code (a copy of the XSI APA is annexed hereto as Exhibit "D", constituting the "XSI Bid").

12. The terms of the XSI APA include:

    (a) Cash or cash equivalent of $487,050[2], consisting of
        i. XSI credit bidding its prepetition loan to the Debtor in the approximate amount of $133,350.00 (to the extent it is not subsumed by the postpetition secured financing, the "DIP");
        ii. XSI credit bidding the DIP, which has a maximum amount of $278,700.00; and
        iii. XSI providing $75,000.00;

    (b) XSI providing 20,000 shares of XSI's common stock, constituting approximately 7.4% of XSI's outstanding equity, valued by XSI at $150,000;

    (c) The XSI Bid is valued in the aggregate of up to $647,050.00, of which $30,000 constitutes the value of the physical assets being sold (collectively, the "XSI Bid Value"); and

    (d) XSI receiving the Assets free and clear of all liens, claims and encumbrances.

---

[2] Such amount may be reduced by any unused portion of the DIP.

## RELIEF REQUESTED

13. By this Motion, the Debtors seek the entry of an order, pursuant to sections 327(a), 328(a) 363 and 365 of the Bankruptcy Code, authorizing and approving (i) the employment and retention of Streambank for marketing and sale of the Assets, (ii) the terms of Streambank' compensation as set forth in the IB Broker Agreement, (iii) a waiver of the requirements of Local Rule 2016-2(d) as it pertains to Streambank's compensation pursuant to the Broker Agreement, and (iv) the sale of the Assets pursuant to the terms of the IB Agreement and the Sale Procedures; which procedures include:

(a) Allowing XSI to act as the "Stalking Horse" bidder and the APA to act as the "Stalking Horse Bid";

(b) Establishing June 30, 2011 as the bidding deadline;

(c) Scheduling an auction of the Assets, on or before July 6, 2011 to be held if a Qualified Bid (as defined in the Bidding Procedures) other than XSI Bid is received the Debtor;

(d) A hearing will be held on or about July 8, 2011 for the Court to consider confirming the results of the auction, or sale to XSI of no Qualified Bid is received; and

(e) Allowing the Debtor and the successful bidder, or XSI if no other Qualified Bid is received, to close on the sale transaction immediately after the auction.

## BASIS FOR THE RELIEF REQUESTED

14. The Debtor's Board and the CRO, in consultation with Debtor's counsel, believe that disposing of the Assets through an auction is the best method available to maximize recovery to its creditors.

15. The retention and employment of Streambank will allow the Debtor to market and sell the Assets in an efficient and expeditious manner. The Debtor believes that Streambank is well suited to provide the services required because of its knowledge of, and the market for, the

Assets. The Debtor therefore believes that the services of Streambank will enable it to maximize the value of the Assets.

A. **Sale and Sale Procedures**

16. The Debtor proposes to sell the Assets pursuant to the Sale Procedures which are annexed hereto as Exhibit "E".

17. The relevant features of the sale procedures are:

   (a) Streambank will market the Assets and contact prospective purchasers;

   (b) Any party interested in conducting due diligence on the Debtor or Assets must execute a nondisclosure and confidentiality agreement (a "NDA") substantially in the form annexed to the Sale Procedures;

   (c) Once an interested party executes a NDA, it will be allowed access to the Debtor's books, records and all relevant documents;

   (d) All competing bids must be for all of the Debtor's Assets;

   (e) All competing bids must be submitted by the Bid Deadline and include a mark-up of the XSI APA;

   (f) Competing bids must be at least $50,000 greater than the XSI Bid Value;

   (g) Bidders providing competing bids provide a good faith deposit of 10% of the bid amount, to be held in escrow; and

   (h) All bids will be considered valid, enforceable contracts.

## LEGAL ARGUMENT

A. **Retention, Employment and Compensation of Streambank**

18. Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

19. Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

20. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed R. Bankr. P. 2014

21. The Debtor has a need to auction and sell the Assets in an expedient and efficient manner. The Debtor has determined that an expeditious sale will maximize the recovery for creditors in this case. The Debtor has no liquid assets to fund operations to pursue any alternative business plan. Therefore, the Debtor has determined that, in its sound business judgment, the retention and employment of a qualified investment banker, which has substantial experience selling similar assets under similar circumstances, is beneficial and will result in the greatest return from the disposition of such property. Accordingly, the Debtor seeks to employ and retain Streambank on the terms and conditions set forth in the IB Agreement.

22. The IB Agreement provides that Streambank will receive $12,500 per month for its efforts (with a maximum of $50,000), plus an additional 15% of the final sale price in excess of the amount of the XSI Bid Value.

23. Section 328(a) of the Bankruptcy Code permits the retention and employment of professionals on a percentage basis. 11 U.S.C. § 328(a). The Debtor believes that the fee structure described herein is fair and reasonable in light of (a) industry practice and prior precedent; (b) market rates charged for comparable services both in and out of a bankruptcy context; (c) Streambank's experience; and (d) the nature and scope of work to be performed by Streambank.

24. Additionally, the Debtor requires a waiver of the information requirements of Local Rule 2016-2(d) with respect to the compensation of Streambank. Streambank, in the ordinary course of its business, receives compensation on a fee plus percentage basis. As such, submission of detailed time entry is unnecessary and would be unduly burden Streambank. Accordingly, the Debtor request that the submission of a formal fee application be waived pursuant to Local Rule 2016-2(g).

25. Further, the Debtor requests the authority to allow Streambank to be reimbursed for its actual and necessary expenses; provided, however, that any compensation or reimbursement of expenses made to Streambank is subject to disgorgement in the event of an order of this Court sustaining a properly filed objection under the standards of section 328 of the Bankruptcy Code.

**B.** **Disinterestedness**

26. To the best of the Debtor's knowledge, as set forth in the Salibello Declaration and based on the representations in the Hazan Declaration, the partners, principals and professional staff of Streambank do not have any connections to the Debtor, its creditors or other parties-in-

interest in this chapter 11 case. Accordingly, to the best of the Debtor's knowledge, Streambank is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

27. Based on the foregoing, the Debtor requests that the Court enter an order approving the retention and employment of Streambank and approving its compensation as set forth in the IB Agreement.

C. **The Sale of the Assets Pursuant to the Sale Procedures Represents an Exercise of the Debtor's Business Judgment**

28. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's property prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell property outside the ordinary course of business be based upon the sound business judgment of the debtor. In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

29. The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of property outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtor has obtained a fair and reasonable price, and (d) good faith. See Abbotts Dairies, 788

F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive; rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

30. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's property. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("[s]ection 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it *has* a duty to protect whatever equities a debtor may have in property for the

benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws."). Bankruptcy Rule 6004 authorizes "sales not in the ordinary course of business . . . by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

31. There is more than ample business justification for the approval of the Sale Procedures and the sale of the Assets in accordance with the Sale Procedures. The Debtor believes that the sale of the Assets will inure to the benefit of the Debtor's estates and creditors and, therefore, represents the exercise of the Debtor's sound business judgment.

32. The proposed sale of the Assets pursuant to the Sale Procedures is in "good faith" within the meaning of the <u>Abbotts Dairies</u> analysis. The Debtor represent that no insider will gain an unfair advantage from the sales pursuant to the Sale Procedures.

33. In fact, every effort has been taken to insure that the former insider status of XSI's principals in no way affords XSI an unfair advantage; all Board decisions regarding the sale of the Assets and the retention of the CRO and the CRO's decision to retain Streambank have been made without such parties, who are no longer directors. Indeed, the retention of the CRO and Streambank are designed to provide independent, disinterested and fair analysis and actions with respect to the sale of the Assets. Further, the prepetition loan, DIP and XSI Bid are all commercially reasonable transactions and are not the product of undue influence.

34. Bankruptcy Rule 2002(a)(2) generally requires a minimum of 20 days notice of proposed sales of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2).

35. The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case,

11

including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing. 11 U.S.C. § 102(1).

36. Similarly, the court in In re Lomas Fin. Corp., held that notice is appropriate under Bankruptcy Code section 102(1) where it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 212 B.R. 46, 54 (Bankr. D. Del. 1997) (quoting Mullane v. Centr. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

37. The Sale Procedures provide for in excess of thirty days between the filing of this Motion and the proposed sale of the Assets.

38. The Debtors believe that this notice and objection period and the procedures contained in the Sale Procedures are justified under the circumstances. The Sale Procedures are designed to maximize the value realized from the sale of the Property and minimize the administrative costs to the Debtor and maximize efficiency.

**D.    The Sale of the Property Should Be Approved Under 11 U.S.C § 363(f)**

32. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a *bona fide* dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. See 11 U.S.C. § 363(f); In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (section

363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

33. Kimball International, Inc. ("Kimball") asserts a lien on certain of the Assets – those physical assets located in the State of Florida (the "Florida Physical Assets"). To the extent Kimball holds such a lien, it shall attach to that portion of the sale proceeds attributable to Florida Physical Assets.

34. Accordingly, the requirements of section 363(f) of the Bankruptcy Code are met, and the proposed disposition of Property should be approved "free and clear" of any such liens, claims or interests, with any such liens to attach to the proceeds of the sale.

## NOTICE

35. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (a) the United States Trustee; (b) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtor, as amended; (c) counsel for XSI; (d) Counsel for Kimball and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

## CONCLUSION

36. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein, substantially in the form attached hereto as Exhibit "F", and granting such other and further relief as the Court deems just and proper.

May 10, 2011
Wilmington, Delaware

BAYARD, P.A.

/s/ *Jamie L. Edmonson*
Jamie L. Edmonson (No. 4247)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000
Fax: (302) 658-6395

-and-

GERSTEN SAVAGE, LLP
Paul Rachmuth
600 Lexington Avenue
New York, New York 10022
Telephone: (212) 752-9700
Facsimile: (212) 980-5192

*Proposed Counsel for the Debtors and Debtors in Possession*

# SCHEDULE 1

Debtor's Assets:

Cash
Parts inventory
Office equipment
2 XTS250 machines located in Sebastian, Florida facility
1 XTS250 machine located at Quality Control Products' facility in New Holland, Ohio
1 XTS250 machine located at Drogueria de la Villa, Ponce, PR
All executory contracts including:
    Licensing agreement with the State University of New Jersey- Rutgers division to utilize Energy Dispersive X-ray diffraction (EDXRD) technology.
    Contract rights with various XST250 machine owners
Intellectual property including: trademarks; trade secrets and know-how; copyright rights, including in proprietary computer algorithms and business processes; all relating to the design, manufacture and marketing of the Debtor's x-ray diffraction detection system.