# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| XSTREAM SYSTEMS, INC. | Case No. 11-11086 (CSS) |
| Debtor. | **Re: Docket No. 5** |

### ORDER (A) AUTHORIZING DEBTOR TO OBTAIN INTERIM POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c) AND 364(d); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion (the "Motion"), dated April 11, 2011, of XStream Systems, Inc., the debtor and debtor in possession in the above-captioned case (the "Debtor" or "Borrower"), pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

(1)     authorization for Borrower to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing (as hereinafter defined) from XSI, LLC. ("Lender"), inclusive of the amount of all pre-petition indebtedness owed by the Debtor to Lender, in accordance with the terms and conditions set forth in the Pre-Petition Financing Agreements (as hereinafter defined), and in accordance with the Budget (as hereinafter defined) and this Order, secured by security interests in and first priority liens upon all Assets (as hereinafter defined) pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code;

(2)     modification of the automatic stay to the extent hereinafter set forth;

(3)     granting to Lender a super-priority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code in respect of the Loans;

(4)     granting Lender pursuant to §§ 361(2) and 363(e) of the Bankruptcy Code replacement liens as adequate protection to the extent the Debtor's use of cash collateral results in a decrease of value of the Lender's interest in such property; and

(5)     setting a final hearing on the Motion.

Due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) (the "Notice") having been served by the Debtor on (i) the Lender; (ii) United States Trustee for the District of Delaware (the "U.S. Trustee"); (iii) holders of the twenty (20) largest unsecured claims against the Debtor's estates (the "20 Largest Unsecured Creditors"); (iv) the Internal Revenue Service ("IRS"); (v) all landlords, owners, and/or operators of premises at which the Debtor's inventory and/or equipment is located; and (vi) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtor's assets (collectively, the "Noticed Parties");

The initial hearing on the Motion having initially been held by this Court on April 12, 2011 and continued to April 25, 2011 (the "Interim Hearing");

Upon the record made by the Debtor at the Interim Hearing, including the Motion and the filings and pleadings in the Case, and good and sufficient cause appearing therefore;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

A.     Petition.   On April 8, 2011 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code.   The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.　　Jurisdiction and Venue. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), and (M). Venue of the Debtor's bankruptcy case (the "Cases") and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.　　Notice. The Notice given by the Debtor of the Motion and the Interim Hearing complies with Bankruptcy Rule 4001(c).

D.　　Debtor's Acknowledgments and Agreements. The Debtor admits, stipulates, acknowledges and agrees that:

(i)　　*Pre-Petition Financing Agreements*. Prior to the commencement of the Cases, Lender made loans and advances to Borrower pursuant to (1) Letter Agreement, Senior Secured Demand Note, Security Agreement, and Control Agreement, dated March 1, 2011, by and between Lender and Borrower (as the same has heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date), and (2) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of Lender, including, without limitation, the security agreements, notes and Uniform Commercial Code ("UCC") financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto, (collectively, the "Pre-Petition Financing Agreements"). Copies of the operative Pre-Petition Financing Agreements are annexed to the Motion as Exhibit "A" thereto.

(ii)　　*Pre-Petition Obligations Amount*. As of the Petition Date, the principal amount of the Loans owed by the Debtor to Lender under and in connection with the Pre-Petition Financing Agreements was an amount not less than $122,000.00, plus all interest accruing thereon, and all fees, costs, expenses, and other charges accrued, accruing, or chargeable with respect thereto totaling $130,662.00 (the "Pre-Petition Obligations")

3

(iv)     *Pre-Petition Collateral.*  As of the Petition Date, the Pre-Petition Obligations were fully secured pursuant to the Pre-Petition Financing Agreements by valid, perfected, enforceable and non-avoidable security interests and liens granted by the Debtor to Lender upon all of the Collateral (as defined in the Pre-Petition Financing Agreements) existing as of the Petition Date and all rents, issues, profits, proceeds, and products thereof (collectively, together with any other property of the Debtor's bankruptcy estates (as defined under section 541 of the Bankruptcy Code) (the "Estates") in which a security interest or lien was granted to Lender prior to the Petition Date (the "Pre-Petition Collateral").

E.     Findings Regarding the Postpetition Financing.

(i)     *Postpetition Financing.*  The Debtor has requested from Lender, and Lender is willing to extend, certain loans, advances and other financial accommodations, as more particularly described and on the terms and conditions set forth in this Order;

(ii)     *Need for Post-Petition Financing.*  The Debtor does not have sufficient available sources of working capital to operate its business in the ordinary course of its business without the financing requested under the Motion.  The Debtor's ability to pay its employees, and to otherwise fund its marketing and sale of itself or its assets is essential to maximizing the potential recovery of all estate creditors.

(iii)     *No Credit Available on More Favorable Terms.*  The Debtor is unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code without the grant of liens on assets.  The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by Lender pursuant to the Financing Agreements;

(iv)     *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms of the Financing Agreements and this Order are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to the Debtor-in-possession,

4

reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the Financing Agreements and this Order have been negotiated in good faith and at arms' length by and between the Debtor and Lender, with both parties represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by Lender as that term is used in section 364(e) of the Bankruptcy Code.

(v) *Budget.* Borrower has prepared and delivered to Lender an initial thirteen (13) week Budget (a copy of which is annexed to the Motion hereto as Exhibit B). Such Budget has been thoroughly reviewed by Borrower and its management and sets forth, among other things, in each case, commencing with the week ending as of April 15, 2011: (A) projected weekly cash receipts for each week; (B) projected weekly cash disbursements for each week; and (C) projected weekly loan balances for each week. Lender is relying upon the Debtor's compliance with the Budget in determining to enter into the post-petition financing agreements provided for herein.

(vi) *Good Cause.* The relief requested in the Motion is necessary, essential, and appropriate and is in the best interests of and will benefit the Debtor, its creditors, and its Estate as its implementation will, among other things, provide the Debtor with the necessary liquidity (A) to minimize disruption to the Debtor's business, (B) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (C) avoid immediate and irreparable harm to the Debtor, its creditors, business, employees, and assets.

(vii) *Immediate Entry.* Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2). No party appearing in the Case has filed or made an objection to the relief sought in the Motion and the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "Interim Order."

1.2    Authorization to Borrow and Use of Loan Proceeds.  Borrower is hereby authorized and empowered to immediately borrow and obtain Loans and to incur indebtedness and obligations owing to Lender pursuant to the terms and conditions of this Interim Order, the Pre-Petition Financing Agreements, and any non-material modification or amendment to the Pre-Petition Financing Agreements (as the same has heretofore been or may hereafter be amended, modified, supplemented, restated, extended or replaced, the "Loan Agreement") during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in section 6 of this Interim Order (the "Interim Financing Period") in an amount not to exceed $50,000.00 in accordance with the Budget.  Subject to the terms and conditions contained in this Interim Order, the Budget and the Financing Agreements, Borrower shall use the proceeds of the Loans and any other credit accommodations provided to Borrower or pursuant to this Interim Order and the Loan Agreement for, inter alia, the payment of general operating and working capital purposes in the ordinary course of Debtor's business in accordance with the Financing Agreements, including amounts paid for such purposes which may constitute administrative expense claims under the Bankruptcy Code directly attributable to the operation of Debtor's business, expenditures authorized by final order of the Court including, without limitation, professionals whose retention has been approved by the Court under Sections 327, 328, and 330 of the Bankruptcy Code (to the extent such Court-authorized expenditures are in accordance with the Financing Agreements) and the fees of the U.S. Trustee, the Clerk of this Court.

6

1.3     Financing Agreements.

1.3.1     Authorization.  The Debtor is hereby authorized and directed to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Loan Agreement, the other Pre-Petition Financing Agreements and all other agreements, documents and instruments executed and/or delivered in connection with or related to the Loan Agreement and the Pre-Petition Financing Agreements and this Interim Order (collectively, the "Financing Agreements").

1.3.2     Amendment.   Subject to the terms and conditions of the Loan Agreement and the other Financing Agreements, Lender and Debtor may amend, modify, supplement, or waive any provision of the Financing Agreements (an "Amendment") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean any Amendment that operates to increase the rate of interest other than as currently provided in the Financing Agreements as amended by the Interim and Final Orders, add specific new events of default or enlarge the nature and extent of default remedies available to Lender following an event of default, or otherwise modify any terms and conditions in any Financing Agreements in a manner materially less favorable to the Debtor or the Debtor's estate (in the good faith judgment of Lender and Debtor), (ii) the Debtor provides prior written notice of the Amendment (the "Amendment Notice") to counsel to any official committee appointed in the Case under section 1102 of the Bankruptcy Code (the "Committee") or in the event no such Committee is appointed at the time of such Amendment, the 20 Largest Unsecured Creditors, counsel to Kimball International, Inc. and Kimball Electronics, Inc. (collectively "Kimball") and the U.S. Trustee, and file the Amendment Notice with the Court, and (iii) no objection to the Amendment is filed with the Court within four (4) business days from the later of the date the Amendment Notice is served or the date the Amendment Notice is filed with the Court in accordance with this section.   Any material Amendment to the Financing Agreements must be approved by the Court to be effective.

1.4    Payments and Application of Payments.  The Debtor is authorized and directed to make all payments and transfers of Estate property to Lender as provided, permitted, and/or required under the Loan Agreement and other Financing Agreements.  Without limiting the generality of the foregoing, the Debtor is authorized to pay or reimburse Lender for all present and future costs and expenses, including, without limitation, all reasonable professional fees and legal expenses (such professional fees and legal expenses to be subject to Section 1.4.1 below), paid, or incurred by Lender in connection with the financing transactions as provided in this Interim Order and the Financing Agreements, all of which, among other things, shall be and are included as part of the principal amount of the Obligations, and shall be secured by the Collateral.

1.4.1  Lender's Professional Fees  The Debtor shall reimburse the Lender for all of its reasonable costs, fees, charges and expenses incurred in connection with Financing Agreements and this Interim Order, whether incurred prior to or after the Petition Date and in connection with the enforcement of any rights or remedies of the DIP Lender relating to the DIP Facility in accordance with this Interim Order.  A copy of any invoice submitted by the Lender to the Debtor shall also be delivered simultaneously to the office of the United States Trustee and counsel to any Committee (the "Fee Notice").  None of such costs, fees, charges and expenses shall be subject to Court approval or required to be recorded or maintained in accordance with the United States Trustee guidelines relating to compensation and reimbursement of expenses and no recipient of any such payment shall be required to file any interim or final fee application with the Court.  Subject to the Debtor, any Committee, or the U.S. Trustee filing a written objection with this Court to any such fees and expenses within ten (10) days after receipt of the Fee Notice, the Debtor shall pay promptly such invoice in accordance with this Interim Order.  To the extent a timely filed objection is filed by the Debtor, any Committee, or the office of the United States Trustee, the Debtor (a) shall pay such portion of the fees and expenses to which no objection is interposed and (b) shall pay any remaining fees and expenses as ordered by the Bankruptcy Court (or upon withdrawal or resolution of the objection).

8

1.5     Continuation of Pre-Petition Procedures.  All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, and delivery of property to Lender, and the funding pursuant to the Financing Agreements, including the blocked account arrangements and any other similar lockbox and blocked depository bank accounts arrangements, are hereby approved, shall continue without interruption or break in continuity after the commencement of the Cases, and shall apply to any and all deposit accounts established in accordance with applicable Guidelines of the United States Trustee, other local rules and mandates or otherwise.

Section 2.     Postpetition Lien; Superpriority Administrative Claim Status.

2.1     Post-Petition Lien.

2.1.1     Lien Granting.

(a)     To secure the prompt payment and performance of any and all Obligations of Debtor to Lender of whatever kind or nature or description, absolute or contingent, now existing or hereafter arising, including, without limitation, all Pre-Petition and Post-Petition Obligations (collectively the "Obligations"), Lender shall have and is hereby granted, pursuant to Bankruptcy Code Section 364(c), effective as of the Petition Date, valid and perfected security interests and liens in and upon all of the Debtor's pre- and post-petition assets (the "Collateral").  Lender's liens on and security interests in the Collateral shall be subject only to (i) valid, perfected, enforceable and unavoidable liens on Collateral in existence as of the Petition Date, other than liens held by a Lender; and (ii) the Carve Out Expenses (as defined herein).

(b)     To secure the prompt payment and performance of all advances pursuant to this Interim Order and made on or after the entry of this Interim Order, Lender is hereby granted, pursuant to Bankruptcy Code Section 364(d), a first priority lien on all intellectual property of the Debtor.  Lender's liens on and security interests in the Debtor's intellectual property shall be subject only to the Carve Out Expenses (as defined herein).

(c)     In accordance with Section 361 of the Bankruptcy Code, Kimball is granted a superpriority, administrative expense claim to the extent the lien granted the Lender on the Debtor's intellectual property creates any dimunition in value of any lien Kimball may have in the Debtor's intellectual property.

(d)     In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of the Obligations secured by such Collateral after satisfaction of the Post-Petition Obligations of Debtor to Lender, shall constitute additional security for the repayment of the Pre-Petition Obligations and adequate protection for the use by the Debtor and the diminution in the value of the Collateral existing on the Petition Date.

2.1.2   <u>Post-Petition Lien Perfection</u>.   This Interim Order shall be sufficient and conclusive evidence of the perfection, and validity of the Post-Petition Liens, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the Collateral or other act to validate or perfect such security interest or lien including without limitation, control agreements with other financial institutions holding a blocked account, investment property control account or other depository account consisting of Collateral (a "<u>Perfection Act</u>"). Notwithstanding the foregoing, if Lender shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, Lender is authorized to perform such act and the Debtor is authorized and directed to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order, notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. Lender may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim

Order in accordance with applicable law. Should Lender so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the Postpetition Lien by virtue of entry of this Interim Order.

2.2 <u>Superpriority Administrative Expense</u>. Subject to the Carve Out below, for all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the Financing Agreements or otherwise, Lender is granted an allowed super-priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 364(c)(1), 726 and/or 1114 of the Bankruptcy Code (the "<u>Super-Priority Claim</u>") provided, however, the Super-Priority Claim shall be subject only to the Permitted Liens and Claims as and to the extent expressly set forth in this Interim Order. Notwithstanding the provisions of this Section 2.2, any Super-Priority Claim shall not be senior to any superpriority claim of Kimball pursuant to Subsection 2.1.1(c).

2.3 <u>Carve-Out Expenses</u>.

2.3.1 <u>Carve-Out Expenses</u>. Upon the declaration by Lender of the occurrence of an Event of Default (as defined herein), Lender's liens, claims and security interests in the Collateral and its Super-Priority Claim shall be subject only to the right of payment of the following expenses (the "Carve-Out Expenses"):

a. statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. section 1930(a)(6);

b. fees payable to the Clerk of this Court; and

c. subject to the terms and conditions of this Interim Order, the unpaid and outstanding reasonable fees and expenses actually

11

incurred on or after the Petition Date, and approved by a final order of the Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code (collectively, the "Allowed Professional Fees") by (i) attorneys, accountants and other professionals retained by the Debtor, less the amount of any retainers, if any, then held by each Professionals, in a cumulative, aggregate sum not to exceed $160,000.00 (the "Debtor Professional Fee Carve Out"), and (ii) attorneys, accountants and other professionals retained by the Committee, less the amount of any retainers, if any, then held by each Professionals, in a cumulative, aggregate sum not to exceed $25,000 (the "Committee Professional Fee Carve Out", and with the Debtor Professional Fee Carve out, the "Professional Fee Carveout")

      d.     Excluded Professional Fees. Notwithstanding anything to the contrary in this Interim Order, the Professional Fee Carve Out shall not be used to pay any Allowed Professional Fees or any other fees and/or expenses incurred by any professional in connection with any of the following: (i) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief; (ii) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Lender's liens on and security interests in the Collateral; (iii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Obligations or Lender's liens on and security interests in the Collateral; (iv) preventing, hindering, or delaying Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral; (v) a request to use the Cash Collateral (as such term

is defined in section 363 of the Bankruptcy Code) without the prior written consent of Lender; (vi) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Lender without the prior written consent of Lender; (vii) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, including, without limitation, any attempt to recover or avoid any claim or interest from Lender under Chapter 5 of the Bankruptcy Code, or (viii) any act which has the effect of materially and adversely modifying or compromising the rights and remedies of Lender, or which is contrary, in a manner that is material and adverse to Lender to any term or condition set forth in or acknowledged by the Financing Agreements or this Interim Order and which results in the occurrence of an Event of Default under the Financing Agreements and/or this Interim Order.

2.4     Carve Out Reserve.  At Lender's sole discretion, Lender may, at any time and in any increment in accordance with the Loan Agreement, establish an Availability Reserve against the amount of Loans and other credit accommodations that would otherwise be made available pursuant to the lending formulae contained in the Loan Agreement in respect of the Professional Fee Carve-Out and the other Carve-Out Expenses.

2.5     Payment of Carve-Out Expenses.  Any payment or reimbursement made either directly by or on behalf of Lender at any time or by or on behalf of the Debtor on or after the occurrence of an Event of Default in respect of any Allowed Professional Fees or any other Carve-Out Expenses shall, in either case, permanently reduce the Professional Fee Carve Out on a dollar-for-dollar basis.  Lender's advances used to fund or otherwise pay the Professional Fee Carve Out and the other Carve-Out Expenses shall be added to and made a part of the

Obligations, secured by the Collateral, and entitle Lender to all of the rights, claims, liens, priorities and protections under this Interim Order, the Financing Agreements, the Bankruptcy Code, and/or applicable law. To remove all doubt, in no event shall Lender be obligated to advance funds in excess of the $50,000.00 approved pursuant to this Order. Payment of any Carve-Out Expenses, whether by or on behalf of Lender, shall not and shall not be deemed to reduce the Obligations and shall not and shall not be deemed to subordinate any Lender's liens and security interests in the Collateral or their Super-Priority Claim to any junior pre-petition or post-petition lien, interest, or claim in favor of any other party. Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case.

2.6     Section 507(b) Priority.  To the extent Lender's liens on and security interests in the Collateral or any other form of adequate protection of the Lender's interests is insufficient to pay indefeasibly in full all Obligations, Lender shall also have the priority in payment afforded by section 507(b) to the extent of any such deficiency.

2.7     Adequate Protection. Lender is hereby granted, as adequate protection pursuant to §§ 361(2) and 363(e) of the Bankruptcy Code, replacement liens in the form of continuing security interests in all property of the Debtor to the extent that the Debtor acquired such property after the filing of the petition (and all proceeds thereof), such replacement collateral is not already subject to liens of Lender as proceeds of its pre-petition collateral, and such replacement collateral is of the nature and type of collateral which Lender claimed a security interest in prior to the Petition Date. Such liens shall have the same validity, priority and extent as Lender's prepetition liens were perfected and enforceable. No other liens or claims are or will be prior to or on a parity with the liens or claims of Lender with respect to such replacement collateral, provided that such security interests shall be subject and subordinate to fees payable pursuant to 28 U.S.C. §1930. Lender shall not be required to file financing statements or record any lien in any jurisdiction or take any other action in order to validate and perfect the security interests and liens granted to it herein.

Section 3.     Default; Rights and Remedies; Relief from Stay.

3.1     Events of Default.  The occurrence of any of the following events shall constitute an Event of Default under this Interim Order:

a.     Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or its obligations under this Interim Order; or

b.     An "Event of Default" under the Loan Agreement or any of the other Financing Agreements.

3.2     Rights and Remedies Upon Event of Default.  Upon the occurrence of and during the continuance of an Event of Default, the Debtor shall be bound by all restrictions, prohibitions, and other terms as provided in this Interim Order, the Loan Agreement, and the other Financing Agreements, and Lender may elect any and all consequences of such Event of Default, subject to the provisions of Section 2.3 regarding Carve-Out Expenses, and Lender shall be entitled to take any act or exercise any right or remedy as provided in this Interim Order and/or any Financing Agreement, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans and, subject to paragraph 3.4 below, setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral.  Lender shall have no obligation to lend or advance any additional funds or provide any other financial accommodations to the Debtor immediately upon or after the occurrence of an Event of Default or an act, event, or condition that with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3     Relief from Automatic Stay.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or by law are hereby modified and vacated without further notice, application, or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under or by virtue of this Interim Order or the Financing Agreements, including, without limitation, (a) to

implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the Financing Agreements, (b) to take any act to create, validate, evidence, attach, or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct, and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs, expenses permitted under the Financing Agreements, and apply such payments to the Obligations pursuant to the Financing Agreements and this Interim Order. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days prior written notice (the "Enforcement Notice") to counsel for the Debtor, counsel for the Committee (if appointed), the U.S. Trustee, counsel for Kimball and the Court, Lender shall be entitled to take any action and exercise all rights and remedies provided to them by this Interim Order, the Financing Agreements and/or applicable law as it may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral and any other assets and properties of the Debtor's Estate upon which Lender has been or may hereafter be granted liens and security interests to obtain the full and indefeasible repayment of all Obligations.

Section 4.    Representations; Covenants; and Waivers.

4.1    Objections to Pre-Petition Obligations.    Any action, claim, or defense (hereinafter, an "Objection") that seeks to object to, challenge, contest, or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity, or amount of the Pre-Petition Obligations, (b) the extent, legality, validity, perfection, or enforceability of Lender's pre-petition liens and security interests in the Pre-Petition Collateral; or (c) Lender's right to apply post-petition payments against Pre-Petition Obligations in satisfaction of Lender's liens as provided for in this Interim Order shall be filed with the Court by any Committee, and no other party, within the earlier of: (i) entry of an order approving the sale of the Debtor's assets under Bankruptcy Code section 363; (ii) sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (iii) in the event no Committee is appointed, within the seventy-five (75) days following the entry of the

Interim Order by any party in interest with requisite standing within (the "Objection Period"). If any such Objection is timely filed and successfully pursued, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Obligations and/or Lender's liens on the Pre-Petition Collateral. If no Objection is timely filed or an Objection is timely filed but denied, (a) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction, or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Lender's pre-petition liens on and security interests in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes, and (b) Lender and each of their respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns, solely in such party's capacity as agents, officers, directors, employees, attorneys, professionals, successors, or assigns of Lender, shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Pre-Petition Financing Agreements and shall not be subject to any further objection or challenge by any party at any time. In the event either (i) a trustee is appointed in this Chapter 11 case, or (ii) this case is converted to a Chapter 7 case prior to the expiration of the Objection Period, then the Objection Period shall be extended, solely for the benefit of the trustee, for 45 days from the date of such appointment or the conversion to Chapter 7.

4.2    The Debtor Waivers. At all times during the Case and whether or not an Event of Default has occurred, the Debtor waives any rights it may have to seek authority (i) to use Cash Collateral of Lender under section 363 of the Bankruptcy Code; (ii) to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Lender, or as may be otherwise expressly permitted pursuant to the Loan Agreement; (iii) to challenge the application of any payments authorized by this Interim Order; (iv) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full and satisfaction of all Obligations on the effective date of such plan; or (v) to seek relief under the Bankruptcy Code, including without limitation, under section 105,

to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Interim Order and the Financing Agreements or Lender's exercise of such rights or remedies; provided, however, Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Lender.

4.3    Section 506(c) Claims. Subject to entry of a Final Order, except for the Carve-Out Expenses, no costs or expenses of administration, which have or may be incurred in the Cases at any time during the Interim Financing Period shall be charged against Lender, its claims, or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by Lender.

4.4    Collateral Rights. Until all of the Obligations shall have been indefeasibly paid and satisfied in full, subject to the terms and conditions of this Interim Order, upon and after the occurrence and continuance of an Event of Default and after giving five days notice, Lender in its discretion, in connection with a liquidation or other disposition of any of the Collateral may enter upon, occupy, and use any real property, equipment, leasehold interests, warehouse arrangements, trademarks, tradenames, copyrights, licenses, patents, or any other assets of the Debtor, which are owned by or subject to a lien of any party other than the Debtor and which are used by the Debtor in their businesses, all without interference from the respective lessors, licensors, or owner of such property for the purpose of conducting liquidation sales of the Debtor's assets and properties; provided that, Lender will be responsible for the payment of any fees, rentals, royalties, or other amounts due such lessor, licensor, or owner of such property and any reasonable costs or expenses incurred by such lessor, licensor, or owner for the period of time that Lender actually occupies or uses the premises, equipment, or the intellectual property (but in no event for any accrued and unpaid fees, rentals, or other amounts due for any period prior to or after the date that any such party actually occupies or uses such assets or properties).

Section 5.     Other Rights and Obligations.

5.1     No Modification or Stay of This Interim Order.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Interim Order, the Financing Agreements, or any term hereunder or thereunder; (ii) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of the Cases (a "Subject Event"), (a) the acts taken by Lender in accordance with this Interim Order, and (b) the Post-Petition Obligations incurred or arising prior to the Lender's actual receipt of written notice from the Debtor expressly describing the occurrence of such Subject Event shall be governed in all respects by the original provisions of this Interim Order, and the acts taken by Lender in accordance with this Interim Order, and the post-petition liens granted to Lender in the Post-Petition Collateral, and all other rights, remedies, privileges, and benefits in favor of the Lender pursuant to this Interim Order and the Financing Agreements shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

5.2     Power to Waive Rights; Duties to Third Parties.  Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order in respect of Lender (the "Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce any Lender Rights.  Any waiver by Lender of any Lender Rights shall not be or constitute a continuing waiver.  A delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to the Lender.

5.3     Disposition of Collateral.  Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of Lender

19

(and no such consent shall be implied, from any other action, inaction or acquiescence by Lender) or an order of this Court, except for sales of the Debtor' Inventory in the ordinary course of its business or as approved by the Bankruptcy Court.

5.4     Reservation of Rights. Except as may be inconsistent with the provisions of this Interim Order, the terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Financing Agreements, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

5.5     Binding Effect. This Interim Order shall be binding upon the Debtor, all parties in interest in the Case, and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or a subsequently converted bankruptcy case of the Debtor. This Interim Order shall also inure to the benefit of Lender, Debtor, and their respective successors and assigns. The provisions of this Interim Order and the Financing Agreements, Post-Petition Obligations, Superpriority Claim and any and all rights, remedies, privileges, and benefits in favor of Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case. Any order dismissing the Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and Lender's liens in the Collateral shall

20

continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the Collateral.

5.6     Limited Effect.  Unless the Interim Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Financing Agreements and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the Financing Agreements.

5.7     Objections Overruled.  All objections to the Motion on an interim basis are hereby overruled.

Section 6.     Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for June 1, 2011, at 3:00 p.m. before this Court.  The Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Creditors Committee after same has been appointed, or Creditors Committee counsel, if same shall have filed a notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for Lender, Robinson & Cole LLP, Attn: Patrick M. Birney, 225 Trumbull Street, Hartford, Connecticut 06103; (b) counsel for Debtor, Gersten Savage, LLP, 600 Lexington Avenue, New York, New York 10022; Attn: Paul Rachmuth, Fax: (212) 980-5192 ; (c) counsel to any Committee; and (c) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case to allow actual receipt of the foregoing no later than May 25, 2011 at 4:00 p.m., prevailing Eastern time.  In the event this Court modifies any of the provisions of this Interim Order or the Financing Agreements following such further hearing, such modifications shall not affect the rights and priorities of Lender pursuant to this Interim Order with respect to the Collateral, and any portion of the Obligations which arises or is incurred or is advanced prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect

21

except as specifically amended or modified at such Final Hearing.

Dated: May _13_, 2011
       Wilmington Delaware

_____
Honorable Christopher S. Sontchi
United States Bankruptcy Judge