# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| XSTREAM SYSTEMS, INC., | Case No. 11-11086 (CSS) |
| Debtor. | Re: Docket No. 89 |

## NOTICE OF FILING OF CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT TO EXHIBIT B OF AMENDED MOTION OF THE DEBTOR FOR AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS, AND (II) SCHEDULING AN AUCTION IN CONNECTION WITH THE SALE

PLEASE TAKE NOTICE that on June 21, 2011, the above captioned debtor and debtor-in-possession, filed the **Amended Motion of the Debtor for an Order (I) Approving Bidding Procedures for the Sale of the Debtor's Assets, and (II) Scheduling an Auction in Connection With the Sale** (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that attached hereto is the Confidentiality and Nondisclosure Agreement, which is Exhibit B to the Amended Motion of the Debtor for an Order (I) Approving Bidding Procedures for the Sale of the Debtor's Assets, and (II) Scheduling an Auction in Connection With the Sale.

Dated: June 24, 2011  BAYARD, P.A.
Wilmington, Delaware

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (No. 4247)
Daniel A. O'Brien (No.4897)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
jedmonson@bayardlaw.com
dobrien@bayardlaw.com

- and -

GERSTEN SAVAGE LLP
Paul Rachmuth, Esq.
600 Lexington Avenue
New York, New York 10022-6018
Telephone: (212) 752-9700
Facsimile: (212) 980-5192
prachmuth@gerstensavage.com

*Counsel to the Debtor*
*and Debtor-in-Possession*

# CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Confidentiality and Nondisclosure Agreement (this "Agreement"), dated as of _____, 2011, ("Effective Date") is between XSTREAM SYSTEMS, INC. ("Provider"), and _____ ("Recipient").

Recipient desires to obtain certain Confidential Information (as defined below) relating to Provider and its business for the limited purposes of evaluating the business and assets of Provider for the purpose of participating in an auction of the Provider and/or its assets (the "Purposes"). Provider has agreed to make the Confidential Information available to Recipient upon the terms and conditions set forth herein.

In consideration of the mutual promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Provider and Recipient agree as follows:

1. **Confidential Information.** Provider will disclose and make available to Recipient certain Confidential Information for Recipient's use in connection with the Purposes. The term "Confidential Information" as used in this Agreement shall mean all information, data, knowledge, and know-how (in whatever form and however communicated) relating, directly or indirectly, to Provider (or to its affiliates or to its or their businesses, operations, properties, products, markets, or financial positions) that is delivered or disclosed by Provider or any of its officers, directors, partners, members, employees, agents, affiliates, or shareholders to Recipient in writing, electronically, verbally, or through visual means, or which Recipient learns or obtains aurally, through observation or through analyses, interpretations, compilations, studies, or evaluations of such information, data, knowledge, or know-how. The term "Confidential Information" shall not include information, data, knowledge, and know-how, as shown by written records, that (a) is in Recipient's possession prior to disclosure to Recipient, (b) is in the public domain prior to disclosure to Recipient, (c) is independently developed by Recipient without regarding to the Confidential Information, (d) becomes available to Recipient on a non-confidential basis from a third party who, to Recipient's knowledge, is not otherwise bound by a confidentiality obligations owed to the Provider; or (e) lawfully enters the public domain through no violation of this Agreement after disclosure to Recipient; however, such term shall include all analyses, interpretations, compilations, studies, and evaluations of such information, data, knowledge, and know-how generated or prepared by or on behalf of Provider or Recipient. The term "document," as used in this Agreement, shall include, without limitation, any writing, instrument, agreement, letter, memorandum, chart, graph, blueprint, photograph, financial statement, or data, telex, facsimile, cable, tape, disk, or other electronic, digital, magnetic, laser, or other recording or image in whatever form or medium.

2. **Use of Confidential Information.** Recipient agrees to use the Confidential Information solely for the Purposes and for no other purpose.

3. **Disclosure of Confidential Information.** Recipient agrees to keep the Confidential Information confidential and not to disclose the Confidential Information to any person or entity other than (a) such of Recipient's officers, directors, partners, members,

employees, attorneys, accountants, or financial advisors who have a bona fide need to have access to such Confidential Information in order for Recipient to carry out the Purposes and who have agreed to be bound by the confidentiality obligations of this Agreement, and (b) such other persons as Provider hereafter agrees may receive such Confidential Information (which agreement may be withheld for any reason or for no reason). Recipient shall be responsible and liable for any use or disclosure of the Confidential Information by such parties in violation of this Agreement. Nothing contained herein shall be deemed to prevent disclosure of any of the Confidential Information if, in the opinion of Recipient's legal counsel, such disclosure is legally required to be made in a judicial, administrative, or governmental proceeding pursuant to a valid subpoena or other applicable order; provided, however, Recipient shall give Provider at least ten days prior written notice (unless less time is required by the applicable proceeding) before disclosing any of the Confidential Information in any such proceeding and, in making such disclosure, Recipient shall disclose only that portion thereof required to be disclosed and shall take all commercially reasonable efforts, at the sole request and expense of the Provider, to preserve the confidentiality thereof, including obtaining protective orders and supporting Provider in intervention.

4. **Representations and Warranties.** Provider represents and warrants to Recipient that it has full right, power, and authority to disclose or make available the Confidential Information to Recipient as provided for in this Agreement without the violation of any contractual, legal, or other obligation to any entity or person. Provider specifically disclaims and makes no representation or warranty, expressed or implied, as to the accuracy, completeness, usefulness, or reliability of the Confidential Information or any portion thereof, and Recipient shall use the Confidential Information at its own risk.

5. **Further Conditions on Providing Confidential Information.** Provider specifically reserves the right to further condition providing all or any part of the Confidential Information upon a showing by the Recipient that it (a) is not associated with a competitor of the Provider, and (b) has the financial wherewithal to consummate the transaction contemplated by the Purpose.

6. **Copies of Documents.** Recipient agrees not to make or reproduce any copies of any document (or any portion thereof) which is part of the Confidential Information, except to deliver copies of such documents to the persons described in paragraph 3 of this Agreement.

7. **Destruction or Return of Documents.** Recipient agrees to destroy or return to Provider, within ten (10) business days after a written request by Provider, all documents (including all copies thereof) which have been delivered or disclosed to Recipient, or which Recipient has obtained, as part of the Confidential Information; provided that Recipient may retain copies of Confidential Information stored on its back-up or archiving systems and for compliance purposes, so long as such materials remain subject to obligations of confidentiality hereunder.

8. **Legal Remedies.** Recipient agrees that if this Agreement is breached, or if a breach hereof is threatened, the remedy at law may be inadequate, and therefore, without limiting any other remedy available at law or in equity, an injunction, restraining order, specific

performance, and other forms of equitable relief or money damages or any combination thereof may be available to Provider. The successful party in any action or proceeding brought to enforce this Agreement may be entitled to recover the costs, expenses, and fees incurred in any such action or proceeding, including, without limitation, attorneys' fees and expenses.

9. **Severability.** If any provision of this Agreement is invalid or unenforceable in any jurisdiction, such provision shall be fully severable from this Agreement and the other provisions hereof shall remain in full force and effect in such jurisdiction and the remaining provisions hereof shall be liberally construed to carry out the provisions and intent hereof. The invalidity or unenforceability of any provision of this Agreement in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction, nor shall the invalidity or unenforceability of any provision of this Agreement with respect to any person or entity affect the validity or enforceability of such provision with respect to any other person or entity.

10. **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PROVISIONS THEREOF. THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION AND VENUE IN ANY COURT OF COMPETENT JURISDICTION IN SUCH STATE AND IN THE UNITED STATES DISTRICT COURT FOR SUCH STATE, AND TO SERVICE OF PROCESS UNDER THE STATUTES OF SUCH STATE.

11. **Notices.** All notices and other communications required under this Agreement to be in writing shall be addressed to the parties at the addresses or facsimile numbers set forth below each party's signature, or to such other addresses or facsimile numbers of which a party may from time to time notify the other party pursuant hereto. Such notices and communications shall be deemed given upon the earlier of (a) actual receipt, (b) five business days after being mailed by registered or certified mail, return receipt requested with postage prepaid, (c) when sent by facsimile with receipt confirmed by telephone, or (d) one business day after being deposited with a recognized overnight courier service with charges prepaid.

12. **Term.** The restrictions on use and disclosure of Confidential Information contained in paragraphs 2 and 3 of this Agreement shall terminate one year after the Effective Date of this Agreement; provided, however, the termination of such restrictions shall not affect the rights, powers or remedies of the parties or otherwise limit any cause of action or claim arising from the other party's breach of or failure to perform any duty or obligation under this Agreement prior to such termination.

13. **Entire Agreement.** This Agreement constitutes the entire understanding between the parties with respect to the subject matter thereof and supersedes all negotiations, prior discussions, or prior agreements and understandings relating to such subject matter. Neither this Agreement nor the parties' performance hereunder shall be deemed to create any special relationship or obligations between the parties other than those expressly set forth herein, and no implied covenants shall apply to this Agreement other than those of good faith and fair dealing. All duties, obligations, rights, powers, and remedies provided for herein are cumulative, and not exclusive, of any and all duties, obligations, rights, powers, and remedies existing at law or in

equity, and Provider shall, in addition to the duties, obligations, rights, powers, and remedies herein conferred, be entitled to avail itself of all such other duties, obligations, rights, powers, and remedies as may now or hereafter exist, including, without limitation, the Uniform Trade Secrets Act and similar statutes and rules of law pertaining to trade secrets and confidential and proprietary information. Neither Provider nor Recipient shall have any obligation or duty to pursue any further agreement or understanding, or to proceed with respect to any additional transaction relating to the Purposes, until a definitive agreement relating thereto has been duly authorized, executed, and delivered by the parties.

14. **Miscellaneous.** This Agreement may not be altered or amended, nor may any rights hereunder be waived, except by an instrument in writing and executed by the party or parties to be charged with such amendment or waiver. No waiver of any term, provision, or condition of this Agreement shall be deemed to be, or construed as, a further or continuing waiver of any such term, provision, or condition, or as a waiver of any other term, provision, or condition hereof. To the extent the parties have deemed necessary, they have consulted with their legal, tax, financial, and accounting advisors with respect to the subject matter of this Agreement. Pronouns in masculine, feminine, and neuter gender shall be construed to include any other gender. Words in the singular form shall be construed to include the plural, and words in the plural form shall be construed to include the singular, unless the context otherwise requires. The headings used in this Agreement are inserted for convenience only and shall be disregarded in construing this Agreement. This Agreement shall be binding upon the parties hereto and, except as otherwise prohibited, their respective successors and assigns. Except for Recipient and Provider, and their permitted successors and assigns, nothing in this Agreement, express or implied, is intended to confer upon any other entity or person any benefits, rights, or remedies. This Agreement may be executed in counterparts and shall become operative when each party has executed and delivered at least one counterpart. This Agreement may be delivered by facsimile or similar transmission, and a facsimile or similar transmission evidencing execution shall be effective as a valid and binding agreement between the parties for all purposes.

This Agreement has been executed on the dates set forth below to be effective as of the date first set forth above.

| XSTREAM SYSTEMS, INC. | |
|---|---|
| By: _____ <br> Gersten Savage, LLP. <br> Counsel to XStream Systems, Inc <br> By: Paul Rachmuth <br> Address: 600 Lexington Avenue <br> New York, New York 10022 <br> Telephone: (212) 752-9700 <br> Facsimile: (212) 980-5192 | By: <br><br> Address: <br><br> Telephone: <br> Facsimile: _____ |