# **EXHIBIT A**

Bid Procedures

# BID PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the sale of the Debtor's Assets[1]. The Sale of the Assets is subject to competitive bidding only as set forth herein and approval by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

## I. Participation Requirements

To participate in the Bidding Process (as defined below), each person or entity must deliver to the Debtor (unless previously delivered), an executed nondisclosure and confidentiality agreement (a "NDA") substantially in the form annexed hereto as Exhibit "A".

Kimball International, Inc. and Kimball Electronics, Inc. (collectively, "Kimball") shall not be required to execute a NDA in order to participate in the Bidding Process, and the absence of an executed NDA from Kimball shall not be grounds to limit disclosure of all properly discoverable information concerning the Debtor's tangible personal property.

Each person or entity that timely delivers an executed NDA to the Debtor in a form reasonably acceptable to the Debtor is hereinafter referred to as a "Potential Bidder."[2]

## II. Determination by the Debtor

The Debtor's Chief Restructuring Officer (the "CRO") in consultation with the Debtor's investment banker, Streambank, LLC ("Streambank") and professionals for the Official Committee of Unsecured Creditors (the "Committee") shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders, (c) negotiate any bid made to acquire the Assets, and (d) make such other determinations as are provided in these Bidding Procedures (collectively, the "Bidding Process"). Neither the Debtor, Streambank nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not a Potential Bidder.

## III. Due Diligence

Due Diligence. All Potential Bidders will be provided with all requested information relevant to the Assets. The Debtor shall afford any Potential Bidder such additional due diligence access or additional information as may be reasonably requested by the Potential Bidder that the CRO in consultation with Streambank and the Committee, determines to be

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Amended Motion of the Debtor for an Order (I) Approving Bidding Procedures for the Sale of the Debtor's Assets, and (II) Scheduling an Auction in Connection with the Sale (the "Motion").

[2] The CRO, in consultation with Streambank and the Committee, may use her discretion to condition granting Potential Bidder status to an entity upon such entity's demonstrating its financial wherewithal to Purchase the Assets.

reasonable and appropriate. No additional due diligence will be made available to Potential Bidders after the Bid Deadline (as defined below).

## IV. Bid Deadline

A Potential Bidder that desires to make a bid shall deliver copies of its bid by facsimile and email to (a) Streambank, 97 Chapel Street, Needham, Massachusetts 02492, (b) counsels to the Debtor, Gersten Savage LLP, 600 Lexington Avenue, 9th Floor, New York, NY 10022 (Attn: Paul A. Rachmuth), Email: prachmuth@gerstensavage.com; and Bayard, P.A. 222 Delaware Avenue, Wilmington, Delaware 19801 (Attn: Jamie Edmonson), Email: JEdmonson@bayardlaw.com, and (c) Counsel to the Committee, Perkins Coie, 30 Rockefeller Plaza, 25th Floor, New York, New York 10122 (Attn: Schuyler Carroll) by no later than **August 5, 2011 at 5:00 p.m. Eastern Time** (the "Bid Deadline").

## V. Qualified Bids and Deposit

To be considered a qualified bid (herein so called), a bid must include:

(a) an offer to acquire some or all of the Assets in the form of an asset purchase agreement, substantially similar to the XSI APA annexed to the Motion as Exhibit A;

(b) an agreement that the Potential Bidder's offer is binding and irrevocable until forty-eight (48) hours after the earlier of (i) consummation of the Sale, (ii) the withdrawal of the Assets from the Auction by the Debtor, or (iii) thirty (30) days after the Sale Hearing;

(c) aggregate consideration in an amount at least $20,000 greater than the XSI Bid Value (which is valued by XSI at $647,050 for all Assets), and the cash component of such aggregate consideration must be not less than $457,050 (the "Qualifying Overbid Amount")[3];

(d) documentation showing adequate assurance of the Potential Bidder's future performance under any unexpired lease or executory contract to be assumed, pursuant to 11 U.S.C. §365(f)(2)(B); and

(e) a certified check or wire transfer in an amount equal to 10% of the bid amount, payable to the order of [Investment Banker Escrow Account] (the "Good Faith Deposit") and written evidence of available cash or a commitment for financing if selected as the Successful Bidder (as hereinafter defined) and such other evidence of ability to consummate the transaction as the CRO and Investment Banker may reasonably request.

---

[3] Such amount may be reduced by any unused portion of the DIP and is subject to the Committee's rights to challenge XSI's liens and claims.

2

The CRO, in consultation with Streambank and the Committee, will review each bid received from a Potential Bidder to ensure that it meets the requirements set forth above. A bid received from a Potential Bidder that meets the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The CRO, in consultation with Streambank and the Committee, may value a Qualified Bid based upon any and all factors they deem pertinent, including, among others: (a) the amount of the Qualified Bid; (b) the risks and timing associated with consummating a transaction with the Potential Bidder; (c) the risks associated with any non-cash consideration in any Qualified Bid; (d) any other factors that the Debtor may deem relevant to the Sale.

The CRO, in consultation with Streambank and the Committee, reserves the right to reject any bid if, in her business judgment, such bid:

(a) requires any indemnification of such Potential Bidder;

(b) is not received by the Bid Deadline;

(c) is subject to any due diligence, financing condition, or other contingencies (including representations, warranties, covenants, and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the Assets other than entry of the order confirming the sale; or

(e) does not meet the requirements for a Qualified Bid as set forth herein above.

Any bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.

XSI shall be deemed a Qualified Bidder and is not required to provide a Good Faith Deposit.

Kimball is entitled to submit, and for the purpose of these Bidding Procedures is deemed to have submitted a credit bid for the Debtor's tangible property which was located in the State of Florida at any time from May 3, 2010 to present in the sum of $50,000. Kimball shall be deemed a Qualified Bidder, shall be entitled to participate in the Auction (defined below), and is not required to provide a Good Faith Deposit to the extent it exercises its 'credit bid' rights regarding the such assets. However, to the extent that Kimball bids on any other assets, a Good Faith Deposit will be required.

## VI. Approval of Procedures Governing the Assumption and Assignment of Executory Contracts and Unexpired Leases

Within 5 business days of entry of the Order approving these Bidding Procedures, the Debtor shall file and, via overnight courier service or electronic mail, transmit a notice to all counterparties to executory contracts and unexpired leases, which notice shall identify the (a) counter-party to such executory contract and unexpired lease, (b) contain a brief description of the subject contract or lease and (c) reflect the Debtor's calculation of any cure amount, if any, which may be due to such counterparty in the event such contract or unexpired lease is to be

assumed pursuant to the provisions of 11 U.S.C. Section §365 (the "Cure Amount"). Counter-parties to executory contracts or unexpired leases must file with the Court and serve on (a) counsels to the Debtor, Gersten Savage LLP, 600 Lexington Avenue, 9th Floor, New York, NY 10022 (Attn: Paul A. Rachmuth), Email: prachmuth@gerstensavage.com; and Bayard, P.A. 222 Delaware Avenue, Wilmington, Delaware 19801 (Attn: Jamie Edmonson), Email: JEdmonson@bayardlaw.com; (b) Counsel to the Committee, Perkins Coie, 30 Rockefeller Plaza, 25th Floor, New York, New York 10122 (Attn: Schuyler Carroll); and (c) counsel to Proposed Buyers, Robinson and Cole, LLP, 280 Trumbull Street, Hartford, CT 06103 (Attn: Patrick Birney), Email: pbirney@rc.com, any objection to the Debtor's calculation of the Cure Amount, or to the Debtor's assumption or assignment of such contract or lease such that any such objections are filed and are served by 5:00 p.m., July 29, 2011. Failure to file an objection to the Cure Amount shall be deemed a waiver to object to the Debtor's Cure Amount.

## VII. Auction

If at least one Qualified Bid is received by the Bid Deadline other than the Qualified Bids submitted by Kimball and XSI as described herein, the Debtor will conduct the Auction (the "Auction") for the Sale of the Assets to be consummated upon confirmation by the Bankruptcy Court. If the Debtor does not receive any Qualified Bids other than the Qualified Bids submitted by Kimball and XSI as described herein, no Auction will be held and Kimball will be the Successful Bidder for the Debtor's tangible property which was located in the State of Florida at any time from May 3, 2010 to present and XSI will be the Successful Bidder for all other of the Debtor's Assets. The Auction shall take place at 10:00 a.m. (Eastern Time) on **August 8, 2011**, at the offices of counsel for Debtor, Gersten Savage LLP, 600 Lexington Avenue, 9th Floor, New York, New York 10022, or such later time or such other place as the Debtor shall designate and provide notice to all Qualified Bidders who have submitted Qualified Bids. Only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Representatives of any Committee appointed in this case and any other parties the Debtor deems appropriate shall be able to attend and observe the Auction.

At the Auction, participants will be permitted to increase their bids in an "open outcry" auction. The bidding shall start at the amount offered in the highest Qualifying Bid, plus $20,000 and will continue in increments of at least $20,000 in cash (or such lower amount as the Debtor shall set during the auction) until the bidding ceases. Qualified Bidders will be entitled to a credit for the amount of their Good Faith Deposit.

The Debtor may alter the Bidding Procedures at the Auction if, in the reasonable judgment of the CRO, in consultation with Streambank and the Committee, such alteration will better promote the goals of the Auction.

Immediately prior to the conclusion of the Auction, the CRO, in consultation with Streambank and the Committee, will: (a) review each bid made at the Auction on the basis of financial and contractual terms and such factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Sale; (b) identify the highest or best bid or bids in the event a combination of bids, represent the highest bid (the "Successful Bid(s)") for the Assets at the Auction; and (c) notify all Potential Bidders at the Auction, prior to

its conclusion, of the name of the person making the Successful Bid(s) (the "Successful Bidder(s)"), and the amount of the Successful Bid(s).

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale of the Assets and the construction and enforcement of the Plan.

## VIII. Implementation of Successful Bid

The CRO, in consultation with Streambank and the Committee, may (a) determine, in her reasonable business judgment, which Qualified Bid(s) is/are the Successful Bid(s) and the next best bid(s) (the "Next Best Bid(s)"); and (b) reject at any time before entry of an order approving the Sale, any bid that, in her reasonable judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or (iii) contrary to the best interests of the Debtor and its estate.

The Debtor and the Successful Bidder(s) shall use reasonable efforts to consummate the Sale (the "Sale Closing") on or before **August 15, 2011**, unless a later date is agreed to by the Debtor and the Successful Bidder. If the Successful Bidder does not close the sale of the Assets by such date, as may be extended, then the Debtor shall be authorized, but not required, to close with the party that submitted the Next Best Bid(s) (the "Next Best Bidder(s)"), without a further court order. If the Debtor decides to close with the Next Best Bidder(s), the Debtor and the Next Best Bidder(s) will have an additional ten (10) business days to close.

## IX. No Fees for Potential Bidders or Qualified Bidders

Potential Bidders or Qualified Bidders shall not be allowed any break-up, termination, or similar fee. Moreover, neither the tendering of a bid nor the determination that a bid is a Qualified Bid shall entitle a Potential Bidder or Qualified Bidder to any break-up, termination, or similar fee and all Potential Bidders and Qualified Bidders are deemed to have waived any right to seek a claim for substantial contribution or any other payment from the Debtor or its estate.

## X. Return of Good Faith Deposit

The Good Faith Deposits of all Potential Bidders, except the Good Faith Deposit relating to the Successful Bidder(s) and the Next Best Bid(s), shall be returned by the Debtor within forty-eight (48) hours after the conclusion of the Auction. The Good Faith Deposit relating to the Next Best Bid(s) shall be returned forty-eight (48) hours after the earlier of (a) withdrawal of the Assets from the Auction by the Debtor, or (b) the Sale Closing. If the Successful Bidder(s) or the Next Best Bidder(s) defaults in their obligations to the Debtor pursuant to their bids, then the Debtor shall retain their Good Faith Deposit as liquidated damages.

## XI. Approval of the Auction Results

The Bankruptcy Court has scheduled a hearing on **August [10], 2011 at __:__ _.m.** to approve the Sale to the Successful Bidder pursuant to Section 363(f) of the Bankruptcy Code. Closing of the transaction with the Successful Bidder shall occur as soon as practicable after the Auction results have been approved by the Bankruptcy Court.

5